**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ELIZABETH NOVA, for herself and the Class,** *Plaintiff,* | : | |
| **v.** | : | **C.A. NO.: 1:25-cv-10105** |
| **BOSTON MEDICAL CENTER CORPORATION,** *Defendant.* | : | |

**DEFENDANT BOSTON MEDICAL CENTER CORPORATION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Linn F. Freedman, BBO #639564
Wystan M. Ackerman, BBO #651086
Wm Maxwell Daley, BBO #694729
**ROBINSON & COLE LLP**
One Boston Place, 26th Floor
Boston, Massachusetts 02108
Tel.: 617-557-5900
Fax: 617-557-5999
lfreedman@rc.com
wackerman@rc.com
wdaley@rc.com

*Attorneys for Defendant Boston Medical Center Corporation*

**TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES** ..... ii

**PRELIMINARY STATEMENT** ..... 1

- **I. FACTS ALLEGED** ..... 2
- **II. ARGUMENT** ..... 3
  - **A. PLAINTIFF'S ECPA CLAIM FAILS AS A MATTER OF LAW** ..... 3
  - **B. PLAINTIFF'S PRIVACY ACT CLAIM FAILS** ..... 8
  - **C. PLAINTIFF CANNOT CLAIM A BREACH OF FIDUCIARY DUTY** ..... 11
  - **D. PLAINTIFF FAILS TO ALLEGE A NEGLIGENCE CLAIM** ..... 12
  - **E. PLAINTIFF DOES NOT ALLEGE ANY BREACH OF CONFIDENCE** ..... 15
  - **F. PLAINTIFF DOES NOT ALLEGE AN ACTIONABLE BREACH OF CONTRACT** ..... 16
  - **G. PLAINTIFF CANNOT PLEAD UNJUST ENRICHMENT** ..... 18
- **III. CONCLUSION** ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................19

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....................15

*Allen v. Novant Health, Inc.*,
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....................10

*American Hosp. Ass'n. v. Becerra*,
738 F.Supp.3d 780 (N.D. Tex. Jun. 20, 2024) ....................2, 6, 14

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ....................12, 17

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .................... *passim*

*Beauregard v. Meldon*,
2019 WL 6877185 (D. Mass. Dec. 17, 2019) ....................16

*Bonewit v. New-Indy Containerboard LLC*,
2024 WL 4932186 (D. Mass. Dec. 2, 2024) ....................14

*Bose Corp. v. Ejaz*,
732 F.3d 17 (1st Cir. 2013) ....................16

*Boudreau v. Lussier*,
901 F.3d 65 (1st Cir. 2018) ....................4

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ....................9

*Bratt v. Int'l Business Machs. Corp.*,
467 N.E.2d 126 (Mass. 1984) ....................9

*C. M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ....................14

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................5, 6

*Columbia Plaza Assocs. v. Northeastern Univ.*,
227 N.E.3d 999 (Mass. 2024) ....................19

*Comm. v. McCue*,
67 Mass. App. Ct. 1113, 2006 WL 3208584 (2006) (unpublished) ....................9

*Comm. v. Welch*,
167 N.E.3d 1201 (Mass. 2021) ....................9

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................8

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................19

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................12

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
918 N.E.2d 36 (Mass. 2009) ....................15

*Demontegnac v. Selene Fin. LP*,
2019 WL 3546885 (D. Mass. Apr. 16, 2019) ....................16

*Doe v. CVS Pharmacy, Inc.*,
2021 WL 5630358 (Mass. Super. Aug. 3, 2021) ....................11

*Doe v. Genesis Health Sys.*,
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024)....................12, 19

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................5, 10

*Doe v. Post Acute Medical, LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) .................... *passim*

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ....................17

*Doe v. Tenet Healthcare Corp.*,
2024 WL 1756075 (D. Mass. Apr. 23, 2024) ....................10

*Donovan v. Philip Morris USA, Inc.*,
914 N.E.2d 891 (Mass. 2009) ....................14

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)....................10, 17

*Goldstein v. Luxottica of Am., Inc.*,
2021 WL 4093295 (S.D. Fla. Aug. 23, 2021)....................8

*In re Google Inc. Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................5, 8

*Gravallese v. Massachusetts Parole Bd.*,
1995 WL 808813 (Mass. Super. Apr. 19, 1995)....................17

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....................7, 15, 17

*Katz-Lacabe v. Oracle America*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023)....................6

*Kelley v. CVS Pharmacy, Inc.*,
2007 WL 2781163 (Mass. Super. Aug. 24, 2007)....................12

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020)....................9, 10

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003)....................11, 12

*Kurowski v. Rush Sys. for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)....................18

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................9

*In re LastPass Data Sec. Incident Litig.*,
742 F. Supp. 3d 109 (D. Mass. 2024)....................19

*Leavitt v. Brockton Hosp., Inc.*,
907 N.E.2d 213 (Mass. 2009)....................13

*Miller v. Nichols*,
586 F.3d 53 (1st Cir. 2009)....................13

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)....................14

*Nelson v. Salem State Coll.*,
845 N.E.2d 338 (Mass. 2006)....................9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................4

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)........................................................... *passim*

*O'Meara v. New England Life Flight, Inc.*,
842 N.E.2d 953 (Mass. App. Ct. 2006) ..............................................................13

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ...............................................5, 6, 10

*Qestec, Inc. v. Krummenacker*,
367 F. Supp. 2d 89 (D. Mass. 2005)....................................................................11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................................14

*Reidy v. Umass Memorial Medical Center, Inc.*,
2021 WL 6777622 (Mass. Super. Ct. June 17, 2021)..........................................11, 12, 14, 18

*Rodriguez v. FastMed Urgent Care, P.C.*,
2024 WL 3541582 (E.D.N.C. July 24, 2024)............................................................5

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014) ........................................................................................13

*Sandofsky v. Google LLC*,
2021 WL 2941128 (D. Mass. Jul. 13, 2021).........................................................15

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012).....................................................................................3

*Smart v. Main Line Health*,
2024 WL 2943760 (E.D. Pa. June 10, 2024).......................................................7, 14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ..........................................................................10

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024)...........................................................19

*Squeri v. Mount Ida College*,
954 F.3d 56 (1st Cir. 2020)...................................................................................9

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ..............................................6, 8, 10

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009)................................................................................15

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) .......... 18, 19

*Tyler v. Michaels Stores, Inc.*,
840 F. Supp. 2d 438 (D. Mass. 2012) .......... 19

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) .......... 5, 6

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) .......... 1

*Webb v. Injured Workers Pharmacy*,
LLC, 2023 WL 5938606 (D. Mass. Sept. 12, 2023) .......... 17

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) .......... 16

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... *passim*

*Willitts v. Engie N.A. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021) .......... 15

*Yaghoobi v. Tufts Med. Ctr., Inc.*,
2025 WL 81591 (D. Mass. Jan. 13, 2025) .......... 9

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) .......... 13, 15

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 8

**STATUTES**

18 U.S.C. § 2510 .......... 8

18 U.S.C. § 2511 .......... 1, 4, 5, 8

Federal Wiretap Act of 1968 .......... 8

M.G.L. c. 111 § 70E .......... 13

Massachusetts Privacy Act, G.L. c. 214 § 1B .......... 3, 8

Massachusetts Wiretap Act .......... 1, 5

**RULES**

Fed. R. Civ. P. 12 ....................................................................................................................11

**PRELIMINARY STATEMENT**

This lawsuit is one of many putative class actions filed against healthcare providers both in Massachusetts and nationwide. After the Massachusetts Supreme Judicial Court rejected Plaintiff's previous theory of liability under the Massachusetts Wiretap Act in *Vita v. New England Baptist Hosp*., 494 Mass. 824, 825 (2024), Plaintiff then filed an Amended Complaint, abandoning her original theory and asserting new claims in an eleventh-hour attempt to revive her case.[1] The new claims included a federal law claim that led to removal to this Court. Plaintiff's claims all fail as a matter of law, and BMC's motion to dismiss should be granted in full and with prejudice.

Plaintiff claims that non-profit Boston Medical Center (BMC) used third-party code, or "pixels," on its *publicly-available* website, www.bmc.org, that caused the transmission of metadata reflecting search terms used and mouse clicks made on the Website to entities like Meta and Google (not named as defendants). But the Complaint contains *no* allegations regarding *any* information obtained by any third-party concerning *Plaintiff's* use of the BMC website, or how she was allegedly harmed by the alleged transmission of metadata. The Complaint does not allege that *any* of Plaintiff's private information was revealed to *any* human being, or even to a third-party computer server. Instead, the Complaint hypothetically alleges that people who used the BMC website *may* have their mouse clicks and search terms captured for advertising purposes.

Based on these barebones allegations, Plaintiff alleges, on behalf of a putative class, a variety of claims, including under the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.* (the "ECPA"), a criminal statute, seeking statutory damages of $100 per day or $10,000 for each putative class member (every Massachusetts resident who visited BMC's website during the class period, which is impossible to identify), plus attorneys' fees. She also makes

[1] Other plaintiffs made similar claims and voluntarily dismissed their class action after *Vita.*

several tort, contract, and statutory claims under Massachusetts law. Given the number of claims pending against Massachusetts healthcare providers in this Court and others (and other similar actions nationwide), the implications of this suit and others like it are staggering.

As explained below, each of Plaintiff's claims fails as a matter of law. *First*, each count of the Amended Complaint has discrete legal defects that entitle BMC to dismissal. *Second*, Plaintiff alleges absolutely nothing about how she was injured, and, without any concrete and personalized harm alleged, Plaintiff's claims, like her allegations, are all hypothetical and fail. *Third*, Plaintiff relies on a flawed theory that her "protected health information" (PHI) was disclosed, but this is legally incorrect. *See, e.g.*, *American Hosp. Ass'n. v. Becerra,* 738 F.Supp.3d 780, 803 (N.D. Tex. Jun. 20, 2024) ("[w]ithout knowing information that's never received—*i.e.*, the visitor's subjective motive—the resulting metadata could never identify that individual's PHI"; "[s]imply put, **Identity** (Person A) + **Query** (Condition B) **≠IIHI** [or PHI] (Person A has Condition B)"). The *Becerra* decision confirms that merely visiting a website to make a query about a medical condition (or anything else) is not PHI under HIPAA. It is impossible to know *why* the individual made the query, and the query does not include any PHI as that term is defined under HIPAA. Accordingly, the Court should dismiss the Amended Complaint in full and with prejudice.

## I. FACTS ALLEGED

BMC is a non-profit healthcare provider in Boston, Massachusetts that provides inpatient and outpatient care to residents from Boston and surrounding communities. Am. Compl., ¶¶ 15, 17. BMC maintains a *public-facing* website, www.bmc.org (the "Website"), that allows anyone with an internet connection (patient or not) to review information about doctors, services, and treatments offered by BMC. *Id.* ¶¶ 18–20. Separately, BMC patients can access a password-secured portal, called "MyChart," to schedule appointments, pay bills, and access medical records. *Id.* ¶ 19. Plaintiff claims that BMC implemented "various tracking technologies on the Website"—

like "Meta Pixel," and "Google Analytics"—that allegedly tracked web browsing activities, sharing some of the information with third parties for commercial purposes, like "personalized advertisements to healthcare consumers." *Id.* ¶ 1–2, 13, 65–67, 114.

Plaintiff alleges that she is a patient of BMC and that she has used the Website to search for and obtain publicly available information and schedule appointments and review records (only possible through the secure MyChart portal). *Id.* ¶ 12. She does not allege: a single instance where *her* interactions with BMC's Website were transmitted to third parties; how, if at all, she was harmed; that there was any transmission of her browsing activity to third parties; or what "targeted advertisements" she received. Further, Plaintiff never once alleges that her interactions with BMC's "MyChart" were the subject of the alleged code. Rather, she merely alleges a speculative series of *hypotheticals*, while making clear that the hypotheticals "do not necessarily reflect webpages Plaintiff personally visited but are presented for illustrative purposes." *Id.* ¶ 84.

Based on these barebones, largely hypothetical allegations, Plaintiff alleges the following causes of action: Count I–violation of the ECPA; Count II–violation of the Massachusetts Privacy Act, G.L. c. 214 § 1B; Count III–breach of fiduciary duty; Count IV–negligence; Count V–breach of confidence; Count VI–breach of contract; and Count VII–unjust enrichment.

## II. ARGUMENT[2]

### A. PLAINTIFF'S ECPA CLAIM FAILS AS A MATTER OF LAW

Plaintiff's ECPA claim (Am Compl., ¶¶ 163–83), fails because: 1) BMC was a party to the alleged communication and consented to its alleged dissemination; 2) Plaintiff's attempts to invoke

---

[2] On a motion to dismiss, the Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true . . . and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).

the crime-tort exception to the one-party consent rule fall flat; and 3) Plaintiff does not allege that any "contents" were intercepted. Plaintiff's ECPA claim warrants dismissal on any of these bases.

The "EPCA prohibits the 'intercept' of 'any wire, oral, or electronic communication,'" which is defined as "'the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.'" *Boudreau v. Lussier*, 901 F.3d 65, 76–77 (1st Cir. 2018) (quoting the ECPA). However, there is no violation if the person intercepting the communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d).

*First*, Plaintiff's claim is barred because BMC consented to any alleged interception. *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (defendant was "a party to all communications with the plaintiffs' computers or was permitted to communicate with the plaintiffs' computers by [an entity]" and, therefore, "plaintiffs failed to state a legally sufficient wiretapping claim"). Given that BMC was a party that was meant to, and did, receive Plaintiff's purported "communications" by using the Website, which Plaintiff initiated, any claimed interception is not actionable. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) ("To the extent that Plaintiff alleges that Defendant surreptitiously recorded its own communications with Plaintiff, . . . the one-party consent exemption applies"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (same).

*Second*, Plaintiff attempts to invoke the crime-tort exception, under which the one-party consent exception does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). To "prove an impermissible purpose, [Plaintiff] must establish that either the 'primary motivation' or a 'determinative factor' in the actor's decision to

record was the intent to commit a criminal or tortious act." *United States v. McHugh*, 57 F. Supp. 3d 95, 99–100 (D. Mass. 2014) (citing *United States v. Mavroules*, 813 F. Supp. 115, 121 (D. Mass. 1993)). Plaintiff must, therefore, plead sufficient facts to establish that BMC intercepted the communication for the purpose of an *independent* tortious or criminal act separate from the recording or interception. *See In re Google Inc. Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("As the plaintiffs plead no tortious or criminal *use* of the acquired internet histories, § 2511(2)(d) is not inapplicable on the basis of the criminal-tortious purpose exception"); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("[plaintiff] does not allege an independent tort that could provide the basis for the tortious intent necessary to bring a claim under the Wiretap Act").

In similar cases of a healthcare provider's use of pixel tracking technologies on its website, courts have rejected the application of the crime-tort exception in § 2511(2)(d). *See Williams v. TMC Health*, 2024 WL 4364150, at *5 (D. Ariz. Sept. 30, 2024) ("Plaintiffs' allegation that Defendant intended to commit various torts or violate various state and federal laws is conclusory and unsupported" and "all the facts Plaintiffs alleged regarding Defendant's purpose in intercepting the communications point to one conclusion—a non-criminal, non-tortious purpose"); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (similar).[3]

Here, Plaintiff identifies no *independent* act that would establish that BMC had a criminal or tortious intent, and, as the foregoing authorities make clear, where the alleged violation of the ECPA is *itself* the alleged criminal or tortious conduct, courts have rejected the application of the

[3] *See also Rodriguez v. FastMed Urgent Care, P.C.,* 2024 WL 3541582, at *6 (E.D.N.C. July 24, 2024) (interception "for commercial use or gain" is not intercepting "for the purpose of committing any criminal or tortious act"); *B.K.,* 721 F. Supp. 3d at 1065 ("Plaintiffs do not allege that [commercial advantage] constitutes independently illegal or actionable conduct"); *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) ("neither the alleged HIPAA nor privacy violations were independent of the interception").

exception. *See Caro*, 618 F.3d at 100 (refusing to apply the crime-tort exception because the alleged tort, invasion of privacy, "is a tort that occurs through the act of interception itself"). This is exactly the case here—Plaintiff claims that the purported interception was *also* the allegedly criminal or tortious conduct—but this circular reasoning cannot stand. *See id.*; *McHugh*, 57 F. Supp. 3d at 100. Plaintiff has failed to identify any independent criminal or tortious purpose, other than the alleged violation itself, and therefore Plaintiff's claim fails. *See Nienaber*, 733 F. Supp. 3d at 1095; *Okash*, 2024 WL 1285779, at *4.

The Amended Complaint also acknowledges that the conduct was carried out for a *commercial* purpose. *See* Am. Compl. ¶ 30 ("BMC actively facilitated the third-party interception . . . for business reasons"), ¶ 181 ("BMC's use of the Facebook source code was for BMC's commercial advantage to increase revenue from existing patients and gain new patients"). A primarily commercial purpose defeats Plaintiff's attempts to plead the crime-tort exception. *See T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (rejecting plaintiff's attempt to plead the exception as against "the weight of persuasive authority"); *Katz-Lacabe v. Oracle America,* 2023 WL 2838118, at *16 (N.D. Cal. Apr. 6, 2023) ("Defendant's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.").

Further, Plaintiff's argument that the use of the pixel tracking technology disclosed her PHI or individually identifiable health information (IIHI) in violation of HIPAA (*e.g.*, Am. Compl. 128–42) is demonstrably incorrect.[4] In *Becerra*, the court analyzed the December 2022 Bulletin issued by the Department of Health and Human Services that Plaintiff heavily relies on in the Amended Complaint, ¶¶ 128–32. In ordering vacatur of the Bulletin, the court explained that browsing activity on a hospital's public website "does not and cannot identify an individual or the

[4] The Amended Complaint, ¶ 1, refers to PHI and IIHI, collectively, as "Private Information."

individual's PHI." 738 F. Supp. 3d at 802. "A user's intent in visiting [a public website] is unknowable," and, therefore, "[w]ithout knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *Id.* at 725, 801–04. As the court recognized, someone could visit a medical website for any number of reasons, researching a colleague's condition, conducting academic research, or carrying out a favor for someone else, but none of those would disclose PHI or IIHI. *See id.* at 801–02; *see also*, *e.g.*, *Williams,* 2024 WL 4364150, at *4 ("the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA") (emphasis in original); *Upperline Health,* 2024 WL 4953503, at *3 ("There is nothing about [plaintiff's] browsing activity that relates specifically to *her* health or relationship with [the hospital].") (emphasis in original); *K.L. v. Legacy Health,* 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (plaintiff's "generic search queries" for burn specialists and burn treatments do not "constitute PHI"). Given that there is no PHI or IIHI at issue here, there is no disclosure of sensitive information that would support any of Plaintiff's claims. *See K.L.,* 2024 WL 4794657 (dismissing breach of confidence, ECPA, invasion of privacy, breach of contract, unjust enrichment, and negligence claims related the hospital's public-facing website).

Furthermore, the paucity of Plaintiff's allegations regarding her use of the Website, other than for generic purposes, Am. Compl., ¶ 19, further supports the inference that none of her PHI was disclosed. *See, e.g.*, *Smart v. Main Line Health*, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) ("Plaintiff fails to state what specific HIPPA-protected information Plaintiff himself provided to Defendant via his browsing activity that was subsequently disclosed to Meta. Without such factual allegations, the Amended Complaint consists of nothing more than bare-bone

conclusions which are insufficient to withstand dismissal"). On any or all these bases, Plaintiff has failed to allege that the crime-tort exception in § 2511(2)(d) applies, and BMC's consent is therefore dispositive of the ECPA claim. *See Piedmont Healthcare*, 2024 WL 3972984, at *4.

*Third*, Plaintiff fails to allege that the "contents" of any communication were intercepted. Under the ECPA, "[c]ontents" are defined as information "concerning the substance, purport, or meaning of th[e] communication," including "personally identifiable information such as a party's name, date of birth, and medical condition." 18 U.S.C. § 2510(4). Here, Plaintiff alleges nothing with respect to *her* alleged "communications" with the Website involving "contents." *See Williams*, 2024 WL 4364150, at *5 (claims were "insufficient because it is unclear to the Court what 'content' required under these subsections of the statute Plaintiffs allege was 'disclosed' or 'used'"). Moreover, browsing information is insufficient to constitute "contents." *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location . . . Any 'substance' that can flow from these movements must be inferred from the observer and are therefore not communicative.").[5]

### B. PLAINTIFF'S PRIVACY ACT CLAIM FAILS

Plaintiff's Privacy Act claim, M.G.L. c. 214, § 1B (Am. Compl., ¶¶ 184–94), fails because she has not alleged an unreasonable and substantial or serious interference with her privacy. "[T]he SJC has made clear that such claims may be dismissed if they fail to allege an actionable

---

[5] *See also Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) ("'mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff were . . . precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act . . . because it does not convey the substance or meaning of any message'"); *In re Google Inc. Cookie Placement Priv. Litig.*, 806 F.3d 125, 135–39 (3d Cir. 2015) (explaining what constitutes "contents" versus metadata); *In re Zynga Privacy Litig.,* 750 F.3d 1098, 1106–07 (9th Cir. 2014) (same)

interference with privacy[.]" *Squeri v. Mount Ida College*, 954 F.3d 56, 69 (1st Cir. 2020). "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious." *Nelson v. Salem State Coll.*, 845 N.E.2d 338, 348 (Mass. 2006). Massachusetts courts have construed the Privacy Act narrowly, finding protected privacy interests only in disclosure of particularly sensitive personal information. *See e.g.*, *Bratt v. Int'l Business Machs. Corp.*, 467 N.E.2d 126, 136 (Mass. 1984) (protected privacy interest in "medical facts relayed to a physician").[6] Massachusetts courts have found no reasonable expectation of privacy in situations that are much more sensitive than search of a public website. *See, e.g.*, *Comm. v. Welch*, 167 N.E.3d 1201, 1211–22 (Mass. 2021) (busy hospital emergency room was not a location where a suspect had a reasonable expectation of privacy); *Comm. v. McCue*, 67 Mass. App. Ct. 1113, 2006 WL 3208584, *1–2 (2006) (unpublished) (similar).

Here, Plaintiff has not alleged an invasion of privacy that is unreasonable and substantial or serious. Initially, she has not alleged *anything* with respect to her *own* use of the Website. *See, e.g.*, *Yaghoobi v. Tufts Med. Ctr., Inc.*, 2025 WL 81591, at *5 (D. Mass. Jan. 13, 2025) ("the amended complaint nonetheless pleads no facts revealing what information was shared, what aspect of the information was confidential, and why any disclosure went 'beyond' what was necessary"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (Plaintiff could not "reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges [was] disclosed to third parties."). Indeed, courts addressing similar "invasion of privacy" claims premised on the same types of web

[6] *See also Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) ("[a] person's name, home address, and employer are hardly facts of a highly personal or intimate nature"); *Koppel v. Moses*, 2020 WL 6292871, at *8-9 (D. Mass. Oct. 27, 2020) (dismissing claim where plaintiff had "not alleged the disclosure of any private facts").

browsing activity have dismissed those claims. *See Doe*, 2024 WL 1589982, at *4; *Gay v. Garnet Health*, 2024 WL 4203263, at *8 (S.D.N.Y. Sept. 16, 2024); *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *1 (M.D.N.C. Aug. 24, 2023); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024); *Williams*, 2024 WL 4364150, at *4; *Doe v. Post Acute Medical, LLC*, 2025 WL 511069, at *8 (M.D. Pa. Feb. 14, 2025).[7]

Moreover, Plaintiff's claim otherwise fails because people search websites for information on medical conditions for many different reasons, often unrelated to their own personal health. *Bacerra*, 738 F. Supp. 3d. at 803 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI"). Plaintiff has not alleged facts that could establish that her web browsing history is clearly traceable to her. Users of a public website also do not reasonably expect privacy when they type in search terms or visit a particular webpage, and disclosure of such information to Google, for example, is not substantial or serious. *See also*, *e.g., Okash*, 2024 WL 1285779, at *7 n.9 ("[c]ourts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (dismissing invasion of privacy claim because "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA and similar statutes]"); *Koppel v. Moses*, 2020 WL 6292871, at *8–*9 (D. Mass. Oct. 27, 2020) (dismissing Privacy Act claim where plaintiff had "not alleged the disclosure of any private facts").

[7] While the court in *Doe v. Tenet Healthcare Corp.*, 2024 WL 1756075 (D. Mass. Apr. 23, 2024) reached a contrary conclusion, that case was not based on hypothetical allegations and it did not have the benefit of additional case law, like *Bacerra*, which makes clear that the type of information at issue is not sensitive or otherwise protected.

Lastly, Plaintiff fails to allege any damages to support her right to privacy claim. *See Reidy v. Umass Memorial Medical Center, Inc.*, 2021 WL 6777622, at *2 (Mass. Super. Ct. June 17, 2021) (granting Rule 12(b)(6) motion because "abstract concerns about possible future impairments of his rights as a patient, without actual damages . . . are insufficient to state his claims . . . [for] violation of statutes prohibiting invasion of right to privacy"); *Doe v. CVS Pharmacy, Inc.*, 2021 WL 5630358, at *1 (Mass. Super. Aug. 3, 2021) ("rejecting allegations that "disclosure on the CVS website and phone application to her of others' PHI and PI makes it 'reasonable' to assume her PHI and PI were similarly disclosed," because "she alleges no facts to show that this is the case and that she was actually injured").

### C. PLAINTIFF CANNOT CLAIM A BREACH OF FIDUCIARY DUTY

Plaintiff's breach of fiduciary duty claim fails because there is neither any fiduciary duty alleged, nor can she satisfy the other essential elements of a prima facie claim. A plaintiff claiming breach of fiduciary duty must prove: "1) the existence of a fiduciary duty arising from a relationship between the parties, 2) breach of that duty, 3) damages and 4) a causal relationship between the breach and the damages." *Qestec, Inc. v. Krummenacker*, 367 F. Supp. 2d 89, 97 (D. Mass. 2005). While Massachusetts courts have held that a *physician-patient* relationship *may* give rise to a fiduciary relationship, *Korper v. Weinstein*, 783 N.E.2d 877 (Mass. App. Ct. 2003), any such relationship is dependent on the facts alleged.

Here, Plaintiff's allegations relate to a hypothetical use of a hospital's public-facing Website, which does not plausibly support a fiduciary relationship. *See* Am. Compl. ¶ 197. The relationship between Plaintiff and BMC's Website is common *to all members of the public*, which is the antithesis of the fiduciary relationship that underlies such a claim. *See id*. ("fiduciary is held to a higher standard of conduct *only as to matters within the scope of the fiduciary relationship*" and "the scope of the fiduciary duty is defined by the incidents and undertakings of the defendant

*as a physician*" (emphasis supplied)). In *Korper*, the court expressly "declin[ed] . . . to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment," which is exactly what Plaintiff attempts to do here. *Id.* at 882 n.11. Plaintiff's interactions with BMC's *public* Website, which BMC could not even attribute to her, are far removed from any potential fiduciary relationship. *See id.*; *Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Aug. 24, 2007) ("disclosure of this information by the CVS pharmacy suggests that he was a customer of the pharmacy and therefore had been prescribed some medication by some physician . . . [but] this Court does not find that information to be so private, standing alone, as to constitute a breach of a pharmacy's duty of confidentiality").

Lastly, Plaintiff fails to allege any actionable damages, requiring dismissal. *See Reidy v. Umass Mem. Med. Ctr., Inc.*, 2021 WL 6777622, at *2–3 (Mass. Super. Ct. June 17, 2021) (abstract concern about potential future harm based on potential disclosure of PHI insufficient for breach of fiduciary duty); *Post Acute Med.*, 2025 WL 511069, at *9; *T.D.*, 2024 WL 3972984, at *3.

Courts have rejected many similar claims in the context of pixel tracking litigation. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *10 (C.D. Cal. Feb. 1, 2024) ("hospitals do not have a fiduciary relationship to their patients"); *Upperline Health*, 2024 WL 4953503, at *3 (dismissing breach of fiduciary duty claim based on paucity of information alleged); *Doe v. Genesis Health Sys.*, 2024 WL 3890164, at *13 (C.D. Ill. Aug. 21, 2024) (granting motion to dismiss breach of fiduciary duty claim where plaintiff could not find a case that "has found that a healthcare facility has a fiduciary duty in relation to patients' private information"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1125 (S.D. Cal. 2023) (dismissing breach of fiduciary duty claim). This Court too should dismiss Plaintiff's claim.

### D. PLAINTIFF FAILS TO ALLEGE A NEGLIGENCE CLAIM

Plaintiff's negligence claim (Am. Compl., ¶¶ 203–211) fails because there was no duty

owed to Plaintiff by BMC in operating the public-facing website, BMC cannot plausibly be said to have breached any duty, and the economic loss doctrine applies. Plaintiff also fails to allege any damages to support this claim (like her others). *See Leavitt v. Brockton Hosp., Inc.*, 907 N.E.2d 213, 215 (Mass. 2009) (elements of negligence claim).

*First*, BMC owed no duty to Plaintiff in operating the Website. Whether a duty of care exists is a question of law and is appropriate for a motion to dismiss. *See O'Meara v. New England Life Flight, Inc.*, 842 N.E.2d 953 (Mass. App. Ct. 2006) (affirming dismissal based on no duty). Plaintiff only identifies two bases to support her duty claim: M.G.L. c. 111 § 70E and HIPAA. Section 70E only addresses, in pertinent part, a patient's actual medical records and treatment, while HIPAA does not provide any private right of action. *See Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) ("HIPAA does not create a private right of action" and "[t]he district court properly dismissed plaintiffs' claims on this basis"); *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719 (2014) ("as the judge correctly noted, the mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action") (citation omitted).[8] Neither statute provides any support for the notion that BMC had a duty to maintain confidentiality in operating a public-facing Website. *See Williams*, 2024 WL 4364150, at *7 (noting that there is no duty "requiring healthcare providers who maintain websites to protect website visitors from having their interactions with the webpage logged and shared for advertising purposes"; "Plaintiffs fail to sufficiently allege Defendants owed them a duty").

[8] *See also Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021) ("Although the Court is not aware of any case addressing the issue of whether HIPAA creates a duty under tort law, the Court finds it instructive that federal courts have declined to recognize the existence of a private statutory right of action under the statute").

*Second*, Plaintiff has not plausibly alleged that any duty was breached by BMC. As *Becerra* made clear, browsing information on a website does not constitute PHI or IIHI, and thus any alleged disclosure would not breach any duty. *See Nienaber*, 733 F. Supp. 3d at 1087 ("Plaintiff fails to allege facts sufficient to establish a breach of that duty"); *Smart*, 2024 WL 2943760, at *4.

*Third*, Plaintiff alleges no cognizable damages or tangible harm, meaning that her claim fails, and the economic loss doctrine applies. *See Donovan v. Philip Morris USA, Inc.,* 914 N.E.2d 891, 899 (Mass. 2009) ("there can be no invasion of the rights of another unless legal damage is caused, and for that reason nominal damages cannot be recovered") (citation omitted). Plaintiff fails to allege *any* actionable harm in the Amended Complaint, which offers merely conclusory, *hypothetical* allegations regarding harm to Plaintiff (¶¶ 7, 154). *See id.* ("'negligence action may not be maintained unless one has suffered injury or damage'"); *Reidy*, 2021 WL 6777622, at *2 (dismissing data breach case because allegations were "speculative and conclusory and do not sufficiently allege an identifiable, actual harm to [plaintiff] or the members of the putative class"); *Bonewit v. New-Indy Containerboard LLC*, 2024 WL 4932186, at *2 (D. Mass. Dec. 2, 2024) (dismissing negligence claims for lack of damages because plaintiff had "shown no actual misuse or disclosure of his information").[9]

[9] *See also, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024) (dismissing negligence claim where plaintiff's "allegations [regarding damages are] too vague and conclusory to survive"); *B.K.*, 721 F. Supp. 3d 1056, 1069 (similar); *Doe*, 2025 WL 511069, at *7 ("Doe has not adequately pleaded facts regarding damages"); *T.D.*, 2024 WL 3972984, at *4 (plaintiffs "fail to plead actionable damages" and "[t]he better view from other courts around the country is that these types of damage claims are not actionable"); *C. M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024) ("it would be incongruous for plaintiff to allege an injury for negligence based on lost value of sensitive healthcare data"); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *5 (E.D. Pa. Oct. 10, 2023) ("Plaintiffs fail to describe how they sustained these alleged 'damages' or otherwise substantiate their existence. Plaintiffs must articulate their harm or actual loss with more precision to 'nudge' their negligence claim 'across the line from conceivable to plausible'")

In addition, "the economic loss doctrine provides that purely economic losses are not recoverable in negligence . . . in the absence of personal injury or damage to property[.]" *Sandofsky v. Google LLC,* 2021 WL 2941128, at *4 (D. Mass. Jul. 13, 2021) (applying doctrine where plaintiff "has not alleged any personal physical harm or harm to any of his property"); *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,* 918 N.E.2d 36, 46 (Mass. 2009) (similar). Courts applying Massachusetts law dismiss negligence claims under the economic loss doctrine where the claims are premised on purported lost economic value or opportunity. *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.,* 564 F.3d 489, 498 (1st Cir. 2009); *Zoll Med. Corp.*, 565 F. Supp. 3d at 106–07. Here, Plaintiff fails to allege any tangible injury to her person or property due to BMC's alleged use of tracking technologies on the Website. *See, e.g.*, *Zoll Med. Corp.*, 565 F. Supp. 3d at 106–07; Am. Compl. ¶¶ 7, 154 (attempting to allege purported economic harm).

### E. Plaintiff does not Allege Any Breach of Confidence

Plaintiff attempts to state a claim for breach of confidence (Count V, ¶¶ 212–23), but Massachusetts courts have not recognized such a separate cause of action. While the SJC identified a physician's "fiduciary obligation to hold in trust confidential information" in *Alberts v. Devine,* 479 N.E.2d 113, 118–20 (Mass. 1985), Plaintiff alleges a separate breach of fiduciary duty claim (Count III) discussed above. Count V, like the other counts, is premised on hypothetical interactions with BMC's *public* Website. To the extent Plaintiff relies on *Alberts*, she has not alleged that communications with a physician were disclosed, only hypothetical interactions with BMC's public Website. *See Willitts v. Engie N.A. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim based on "no disclosure by a physician").[10]

[10] *See also B.K.*, 721 F. Supp. 3d at 1069 ("Plaintiffs fail to sufficiently allege disclosure. As a result, Plaintiffs' breach of confidence claim fails"), *on reconsideration in part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024); *K.L*, 2024 WL 4794657, at *4 ("Plaintiff cannot proceed on her breach of confidence claim based on searches that she made on Defendant's Public Website").

Moreover, Plaintiff's breach of confidence claim appears to otherwise be wholly duplicative of Count III, addressed *supra*. Count V fails for the same reasons.

### F. PLAINTIFF DOES NOT ALLEGE AN ACTIONABLE BREACH OF CONTRACT

Plaintiff's breach of contract claim (Count VI) fails because she cannot, merely by using BMC's public Website, establish a contract. If her allegations were true, everyone who visits a website would be in a contractual relationship with its owner. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013) (citing *Singarella v. City of Boston*, 173 N.E.2d 290, 291 (Mass. 1961)). Plaintiff fails to allege mutual assent, consideration, and damages (as discussed above).

*First*, Plaintiff fails to allege any mutual assent. She avers that "BMC required [her] . . . to provide . . . Private Information . . . to the BMC Website as a condition of receiving healthcare services," Am. Compl. ¶ 225, but this conclusion has no factual support. Plaintiff's factual allegations describe her purely voluntary action on BMC's public website, and do not describe how or why she was "required" to use the website for the performance of any "healthcare services."

To create an enforceable contract, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Beauregard v. Meldon*, 2019 WL 6877185, at *3 (D. Mass. Dec. 17, 2019). Plaintiff makes no allegations evidencing a meeting of the minds on the terms of any alleged contract regarding her use of the website. *See Demontegnac v. Selene Fin. LP*, 2019 WL 3546885, at *9 (D. Mass. Apr. 16, 2019) (dismissing contract claim for lack of mutual assent). Courts have dismissed similar attempts to plead vague contract claims. *See, e.g., Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) ("Plaintiff alleges that defendant . . . required her to

disclose PII and PHI . . . [but] makes no allegation, however, that either party ever discussed the manner of safeguarding the PII and PHI or that plaintiff had a particular concern about disclosing that information"); *Webb v. Injured Workers Pharmacy*, LLC, 2023 WL 5938606, at *3 n.5 (D. Mass. Sept. 12, 2023) (statement that "[defendant] 'agreed it would not disclose the PII it collects from patients to unauthorized persons' . . . is 'too meager, vague, [and] conclusory to remove the possibility of relief from the realm of mere conjecture'"); *K.L.*, 2024 WL 4794657, at *8 ("Plaintiff has not sufficiently alleged the existence of an implied-in-fact contract" where "she never alleges that she relied upon or even read the [privacy policy] before engaging Defendant's services" and, "Plaintiff has not shown mutual assent"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 821 (N.D. Cal. 2023) ("[P]laintiff does not allege that she was required to read or agree to either of the documents. Instead, she alleges that they were available on the website and that she understood them to include promises by UCSF to safeguard her data.").[11]

*Second*, Plaintiff fails to allege consideration. Plaintiff only baldly alleges that "BMC required Plaintiff . . . to provide . . . Private Information, . . . to the BMC Website as a condition of receiving healthcare services" (Am. Compl. ¶ 225), but this conclusory allegation both defies logic and is wholly unsupported by any other allegations (or comment sense).[12] *See B.K.*, 2024 WL 1343305, at *9 ("Neither B.K. nor N.Z. allege that they exchanged private information, as

[11] *See also M.R.*, 2024 WL 3970796, at *6 ("A patient's choice to use Defendant as a medical service provider does not indicate an intention to enter into an implied contract for the security of information entered on Defendant's website."); *Gay*, 2024 WL 4203263, at *6 ("Plaintiff cannot have assented to assurances described in the [privacy notice] if they did not view the Defendant's policies at the time of contract formation"); *Nienaber*, 733 F. Supp. 3d at 1092 ("Because privacy notices serve to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions, they are not contractual in nature.").

[12] Moreover, the Website's Privacy Policy is provided regardless of what, if any, information was provided and therefore cannot be the basis of Plaintiff's contract claims. *See Gravallese v. Massachusetts Parole Bd.*, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995) (a promise to perform a pre-existing duty is not valid consideration for a contract).

opposed to payment, for medical services" and "the Court is unaware of any medical provider who would accept such an arrangement"). Without any consideration, Plaintiff's contractual claim fails.

*Third*, Plaintiff's breach of contract claim (like her other claims) fails for lack of any actionable damages. *See, e.g.*, *Reidy*, 2021 WL 6777622, at *2 (dismissing breach of contract claim for lack of any damages); *Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, at *7 (N.D. Ill. July 18, 2024) (in web-tracking case, plaintiff "has not plausibly pleaded that she suffered actual damage").[13] Plaintiff has not alleged any harm or damages, and her claim should be dismissed.

### G. Plaintiff Cannot Plead Unjust Enrichment

Plaintiff's claim for unjust enrichment (Count VII, Am. Compl. ¶¶ 231–39), fails because she has adequate remedies available to her at law, and she alleges no damages. Establishing unjust enrichment requires: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020). "'[A] party with an adequate remedy at law cannot claim unjust enrichment,'" and "'[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment.'" *Id.* at 82–83 (quoting *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017)).

Here, Plaintiff pleads six other statutory and common law causes of action, and, while, as set forth above, each fails to state a claim as a matter of law, the *availability* of these claims is dispositive of Plaintiff's unjust enrichment claim. In *Tomasella*, the First Circuit explained that

---

[13] *See also T.D.*, 12024 WL 3972984, at *4 (plaintiff "fail[s] to plead actionable damages"); *Post Acute Medical*, 2025 WL 511069, at *9 ("the complaint contains insufficient factual details to plead causation and damages"); *T.D.*, 2024 WL 3972984, at *4 (plaintiffs "fail to plead actionable damages"); *B.K.*, 721 F. Supp. 3d at 1068 ("Plaintiffs do not allege a cognizable theory of damages" and "Plaintiffs have not persuasively alleged that they 'reasonably expect[ed] that they would be compensated for the 'value of their personal information'" (citation omitted)).

"[t]he viability of [plaintiff]'s [other] claims is 'beside the point,'" because where "an adequate remedy at law was undoubtedly available to her through [her other statutory claim]," an unjust enrichment claim must be dismissed. 962 F.3d at 84; *see also In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 129 (D. Mass. 2024) ("[t]he inquiry turns on '*the availability* of a remedy at law, not the *viability* of that remedy'"); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 386 (S.D.N.Y. 2024) (dismissing unjust enrichment claim).[14]

Further, based on the lack of factual allegations, there is no plausible basis to consider whether Plaintiff conferred any "benefit" to BMC or whether there was any "value" associated with the supposed benefit, which other courts have recognized in dismissing similar claims.[15] *See Columbia Plaza Assocs. v. Northeastern Univ.*, 227 N.E.3d 999, 1018 (Mass. 2024) ("unjust enrichment claim fails because the record does not establish a monetary or property benefit that [plaintiff] conferred on [defendant]"); *Doe*, 2025 WL 511069, at *9 ("same deficiencies previously identified—including the lack of specificity regarding what information was disclosed to whom under what circumstances, and whether that information was linked to Doe specifically—also

[14] *See also Doe v. Genesis Health Sys.*, 2024 WL 3890164, at *10 (C.D. Ill. Aug. 21, 2024); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *9 (N.D. Ill. July 9, 2024) ("To the extent Plaintiff's unjust enrichment claim is tied to the implied contract claim or the [statutory] claim which will also be dismissed, as discussed later, it must 'fall' with these claims"); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *9 (N.D. Ill. Sept. 9, 2024) (same).

[15] Plaintiff is not entitled to any compensation for the use of BMC's Website based on any voluntarily-input data. *See Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) ("there was no unjust enrichment because Tyler has not sufficiently alleged that reasonable people would expect to receive payment by the defendant in these circumstances"); *Williams*, 2024 WL 4364150, at *9 ("allegations do not suggest it would be unjust for Defendant to use the data for analytics and advertising purposes because, in the absence of Defendant's use, Plaintiffs would still be in the same position, i.e. those benefits were not retained at the expense of Plaintiffs").

impact Doe's unjust enrichment claim. He cannot, without those specific facts, demonstrate that defendants obtained a benefit from the conduct alleged or that justice requires disgorgement”).[16]

## III. CONCLUSION

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, and the Court should grant BMC's motion to dismiss.

Dated: March 14, 2025

Respectfully submitted,

**DEFENDANT,**
**BOSTON MEDICAL CENTER CORPORATION,**

*/s/ Wystan M. Ackerman*
Linn F. Freedman, BBO #639564
Wystan M. Ackerman, BBO #651086
Wm Maxwell Daley BBO #694729
**ROBINSON & COLE LLP**
One Boston Place, 26th Floor
Boston, Massachusetts 02108
Tel.: 800-762-2678
Fax: 617-557-5999
lfreedman@rc.com
wackerman@rc.com
wdaley@rc.com

[16] *See also B.K.*, 721 F. Supp. 3d at 1070 (“Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched”); *Nienaber*, 733 F. Supp. 3d at 1093–94 (“Nor does Plaintiff make contentions regarding the specific private information she contends that she shared with Defendant and … [w]ithout this factual support—all of which is within Plaintiff's personal knowledge—Plaintiff has not plead a concrete detriment for purposes of an unjust enrichment claim”).