**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

**Suffolk, ss.**

| | |
|---|---|
| ELIZABETH NOVA,<br><br>For herself and the Class,<br><br>v.<br><br>BOSTON MEDICAL CENTER CORPORATION,<br><br>Defendant. | **Case No. 1:25-cv-10105-GAO** |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**Table of Contents**


I. Introduction .......... 1

II. The Facts .......... 2

A. BMC Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities .......... 2

B. BMC's Failure to Disclose Tracking Technologies and Their Implications for Patient Privacy. .......... 3

C. Plaintiff's Communications Intercepted on the BMC Website. .......... 3

III. Argument .......... 5

A. Plaintiff States a Claim for Violation of the ECPA. .......... 5

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent. .......... 5

2. Plaintiff Identifies Several Legal Bases for the Crime-Tort Exception. .......... 6

3. BMC's Commercial Motives Do Not Negate Its Tortious Purpose. .......... 10

4. Plaintiff Alleges the Interception of the Contents of Her Communications. .......... 10

B. Plaintiff States a Claim under the MRPA. .......... 11

1. Plaintiff's Allegations Regarding Her Own Interceptions Are Sufficient. .......... 12

2. Plaintiff Adequately Alleges Intrusion upon Seclusion. .......... 13

3. Plaintiff Adequately Alleges Disclosure of Private Facts. .......... 14

C. Plaintiff States a Claim for Breach of Fiduciary Duty. .......... 15

D. Plaintiff States a Claim for Breach of Confidence. .......... 16

E. Plaintiff States a Claim for Negligence. .......... 17

F. Plaintiff States a Claim for Breach of Contract. .......... 18

G. Plaintiff Sufficiently Alleges Damages. .......... 19

H. Plaintiff States a Claim for Unjust Enrichment. ............................................................20

IV. Conclusion..........................................................................................................................20

## Table of Authorities

Pages

### Cases

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ........ passim

*Alberts v. Devine*,
395 Mass. 59 (1985) ........ 16

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ........ 12, 14

*Am. Hosp. Ass'n v. Becerra*,
2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) ........ 7

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ........ 17

*Brahm v. Hosp. Sisters Health Sys.,*
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ........ 5, 15, 16, 20

*Bratt v. Int'l Bus. Machines Corp.*,
392 Mass. 508 (1984) ........ 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 14

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 9

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ........ 10, 11

*Commonwealth v. McCarthy*,
484 Mass. 493 (2020) ........ 6

*Commonwealth v. McCue,*
2006 Mass. App. Unpub. LEXIS 47 (App. Ct. Nov. 7, 2006) ........ 14

*Commonwealth v. Welch*,
487 Mass. 425 (2021) ........ 14

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 U.S. Dist. LEXIS 134570 (S.D.N.Y. July 30, 2024) ........ 10, 16

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 8

*Doe v. Bayhealth Med. Ctr. Inc.*,
2025 Del. Super. LEXIS 154 (Super. Ct. Apr. 2, 2025) ... 6, 9

*Doe v. Bon Secours Mercy Health*,
2021 Ohio Misc. LEXIS 3985 (Ct. Com. Pl. Nov. 22, 2021) ... 13, 19

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) ... 11, 12, 14

*Doe v. CVS Pharmacy*,
2021 Mass. Super. LEXIS 494 (Super. Ct. Aug. 3, 2021) ... 20

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023) ... passim

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ... 14, 15

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.) ... 12, 15, 18

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ... 11

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ... passim

*Elkins v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) ... 19, 20

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ... 8

*Garcia v. Columbia Med. Ctr.*,
996 F. Supp. 617 (E.D. Tex. 1998) ... 17

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ... 9

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ... 14

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ... 10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................14

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015)....................9, 11, 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................passim

*In re Meta Pixel Tax Filing Cases.*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................11

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) ....................1

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 21, 2024) ....................3

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) ....................6, 9, 20

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) ....................8

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)....................9

*Kelley v. CVS Pharmacy, Inc.*,
23 Mass. L. Rep. 87 (2007) .................... 6, 15

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)....................13

*Kurowski v. Rush Sys. For Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) ....................5, 8, 9, 10

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................13

*Lamarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024)....................passim

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025) ....................10

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) ....................11

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) ........ 13

*Mayer v. Midwest Physician Admin. Servs.,* LLC,
2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2015) ........ 10

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 10

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ........ 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 8

*Peckham v. Bos. Herald, Inc.*,
48 Mass. App. Ct 282 (App. Ct. 1999) ........ 6

*Polay v. McMahon*,
468 Mass. 379 (2014) ........ 12, 13, 14

*Portier v. NEO Tech. Sols.*,
2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31, 2019) ........ 18

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 7, 10, 11, 15

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ........ 5, 6, 9, 10

*Reidy v. UMass Memorial Medical Center, Inc.*,
2021 Mass. Super. LEXIS 1660 (Super. Ct. June 17, 2021) ........ 20

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014) ........ 17

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991) ........ 11

*Shedd v. Sturdy Mem. Hosp.*,
2022 Mass. Super. LEXIS 7 (Super. Ct. Apr. 5, 2022) ........ 16, 18

*Transamerica Ins. Co. v. KMS Patriots*,
52 Mass. App. Ct. 189 (App. Ct. 2001) ........ 6

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ........ passim

*Williams v. TMC Health*,
2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sept. 30, 2024) ....................17

*Yaghoobi v. Tufts Med. Ctr., Inc.*,
2025 U.S. Dist. LEXIS 6060 (D. Mass. Jan. 13, 2025) ....................13

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) ....................11

*Zelby Holdings, Inc. v. VideogeniX, Inc.*,
92 Mass. App. Ct. 86 (App. Ct. 2017) ....................20

**Statutes**

42 U.S.C. § 1320d ....................7

M.G.L. c. 214 § 1B ....................12

## I. INTRODUCTION

Boston Medical Center ("BMC") injected hidden code for tracking technologies on its website that permitted third parties—including Google and Facebook—to secretly eavesdrop on Plaintiff Elizabeth Nova's ("Plaintiff") communications with BMC. BMC did not disclose those technologies or their significance for patient privacy to consumers. Plaintiff's claims align with First Circuit precedent established twenty years ago, affirming federal wiretap claims for the surreptitious use of tracking technologies on medical websites, facts strikingly similar to those here. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 13-16 (1st Cir. 2003). BMC's arguments for dismissal each lack merit.

First, Plaintiff asserts a federal Electronic Communications Privacy Act ("ECPA") claim. The one-party consent defense sometimes asserted in ECPA cases does not apply here because Plaintiff alleges both a criminal and tortious purpose by alleging BMC's intentional decision to inject hidden code onto its website, which resulted ultimately in criminal and tortious disclosures of intercepted communications, in violation of both federal and state law. BMC's interception and tortious disclosure of Plaintiff's and other consumers' patient status by injecting hidden third-party tracking code onto websites designed for patients, including pages for bill payment, medical records requests, and the purportedly secure MyChart patient portal, further supports Moreover, Plaintiff adequately alleges that the contents of her communications were intercepted by BMC's use of descriptive URLs that, when intercepted, revealed the substance of the intercepted communications. Finally, Plaintiff's allegations of violations of both HIPAA and the ECPA and distinguish this case from cases BMC cites in which courts have dismissed wiretap cases.

Additionally, Plaintiff adequately alleges each Massachusetts claim she asserts. BMC's challenges to particular elements of those claims lack merit, as do its challenges to the sufficiency of Plaintiff's allegations regarding her own communications. Plaintiff alleges more than sufficient detail to support her claims that BMC violated Massachusetts law by secretly injecting eavesdropping code on its website.

For the reasons detailed below, the Court should deny the motion to dismiss.

## II. THE FACTS

### A. *BMC Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities.*

BMC injected hidden code in its website that enabled third parties, including Google, Facebook, and others, to eavesdrop on communications between BMC and patients, including Plaintiff. ¶¶ 36–64, 114.[1] The code caused consumers' browsers to intercept information about the substance of the communication made through each webpage a patient visited and to disclose the intercepted communications to third parties, all without informing the consumer or obtaining consent. *See* ¶¶ 57-62, 65–112. After this lawsuit was filed, BMC limited its use of tracking technologies on its website. ¶ 66.

The substance of communications intercepted included URLs and titles of webpages. URLs serve as addresses for webpages but sometimes also reveal information about the substance of the communication—those URLs are called "descriptive URLs." ¶ 54. BMC used descriptive URLs. For example, URLs for particular medical conditions and departments contained within them the name of the condition or department; therefore, when intercepted, they revealed the substance of the information communicated through the webpage. *See, e.g.*, *id.* (https://www.**bmc**.org/**cancer**) (emphasis added); ¶¶ 71-72, 79, 83, 87, 88, 91-93, 95, 97-98, 101, 103-05, 108, 111-13. The tracking technologies also disclosed the title of each page visited, which further described the substance of the information communicated through the page (such as "Neurology| Boston Medical Center"). *E.g.,* ¶ 86.

Critically to several arguments on this motion to dismiss, BMC deployed the tracking technologies in a manner that revealed Plaintiff's and other consumers' status as patients—by permitting Google and Facebook to eavesdrop on communications relating to appointment requests, bill payments, medical records, and access to BMC's patient portal. ¶¶ 83-84, 102-13. To repeat and be clear, although BMC asserts that "Plaintiff never once alleges that her interactions with BMC's 'MyChart' were the subject of

[1] "¶ __" refers to paragraphs of Plaintiff's Amended Complaint. Plaintiff filed the Amended Complaint in the Massachusetts Superior Court prior to BMC's removal of this case. The state-court e-filing system removes color from and distorts graphics in the Amended Complaint. Accordingly, although the amended complaint is attached to BMC's notice of removal (ECF 1-1 ECF page 340), Plaintiff attaches as **Exhibit 1** to this motion a high-quality, color version of her Amended Complaint.

the alleged code" MTD 3,[2] **this is untrue**. Plaintiff alleges that she visited the patient portal to access her medical records (¶ 12) and that BMC injected the hidden code for the tracking technologies on the patient portal landing page, revealing her patient status to third parties (¶¶ 13, 110-13).[3]

The interceptions were designed to enable Google and Facebook to associate the intercepted communications with individuals known to those third parties to facilitate individualized, targeted advertising to those individuals. The information Google and Facebook used to identify individuals included IP addresses, ¶¶ 38, 53, 60, 74, 81; browser fingerprints (unique combinations of browser and computer settings that confirm the identity of an individual), ¶¶ 73, 75-76, 80; and persistent personal identifiers (numbers) assigned by Google or Facebook used to track a particular individual's communications across the BMC Website and other websites. ¶¶ 38, 73, 82.

B. *BMC's Failure to Disclose Tracking Technologies and Their Implications for Patient Privacy.*

By design, the code for tracking technologies is invisible, implemented through hidden code injected by the website owner (BMC). ¶¶ 2, 58, 61, 65. BMC did not disclose its deployment of technology that shared communications with third parties and instead falsely told consumers they did not share such information—stating, "Boston Medical Center will not intentionally share the contents of any electronic communication with a third-party entity," "[a]ny information collective voluntarily from our website visitors…will not be sold to any third-party marketing companies," and "[o]nline visitors utilizing this site do so anonymously," each of which statements were false. ¶¶ 25-34.

C. *Plaintiff's Communications Intercepted on the BMC Website.*

Plaintiff is a BMC patient. ¶ 12. She regularly used the BMC Website to obtain information about doctors, search for information on medical procedures, schedule appointments, and obtain medical

[2] "MTD" refers to BMC's memorandum in support of its motion to dismiss, ECF 18.

[3] Unlike publicly accessible pages, pages within a patient portal are not archived through online services such as the Internet Archive's Wayback Machine. Accordingly, Plaintiff cannot determine before discovery to what degree BMC used tracking technologies on patient portal pages after a user is logged in. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597, at *21 (N.D. Ill. Oct. 1, 2024) (describing "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery.").

records through the patient portal. *Id.* The pages on the BMC Website Plaintiff visited are the same pages on which BMC used the tracking technologies, and the substance of her communications was intercepted in the same manner as the examples Plaintiff presents in her complaint. ¶¶ 13, 96-101, 85-93, 106-13. Plaintiff neither knew of nor consented to the interceptions or disclosures. ¶ 14.

Woven throughout BMC's brief is its repeated refrain (stated no fewer than ten times) that Plaintiff alleges only "hypotheticals," not "actual" communications or interceptions. MTD Br. 1, 2, 3, 10 n.7, 11, 14, 15. It is not clear what BMC means, but to be clear, Plaintiff alleges she **actually**, not just **"hypothetically**," visited specific pages of the BMC website, and Plaintiff alleges BMC **actually,** not "**hypothetically**," injected hidden code onto those pages that caused the interception of the substance of Plaintiff's communications. Plaintiff identifies several specific pages she visited, some by URL, including the "Request an appointment" page (*see* ¶¶ 13, 83) and the MyChart patient portal page (https:///www. bmc.org/mychart) (*see* ¶¶ 13, 110-13). Plaintiff also alleges that she obtained information on doctors and medical procedures and that the tracking technologies intercepted those communications too. ¶¶ 13, 85-93, 96-101. She does not disclose the identity of her doctors or medical procedures but alleges (accurately) that her communications were intercepted in the same fashion as the examples she presents, ¶¶ 13, 85-93, 96-101, and, as argued below, Plaintiff need not disclose in a publicly filed complaint her private medical information to be a plaintiff, *see* § III-A-4, *infra.* Indeed, it would make little sense to hold that a patient, to assert a claim for improper disclosure of private information to third parties, must disclose that same information to the entire world.

Similarly, if BMC means to suggest Plaintiff must record and present in her complaint the precise text BMC intercepted, similar to the examples she provides, *see. e.g.,* ¶ 86, BMC proposes an insurmountable standard, given that those examples were created using special tools that record network traffic at the time of website browsing, ¶ 67. Because Plaintiff was unaware of the interceptions when she visited the BMC website, she had no reason to use special tools to record her network traffic at the time she communicated with BMC.

## III. ARGUMENT

### A. *Plaintiff States a Claim for Violation of the ECPA.*

BMC violated the ECPA by injecting hidden code into its website that enabled third parties, including Google and Facebook, to eavesdrop on healthcare consumers' communications with BMC. BMC's two arguments for dismissal—first, that it was a party to the communications and therefore may assert a one-party consent defense (and that the crime-tort exception to that defense does not apply); and second, that the interceptions did not involve the "contents" of any communication—each lack merit.

#### 1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent.

Although the ECPA provides a defense if **either** party to a communication consents to its interception, the ECPA imposes a **two-party** consent requirement (requiring the consent of **both** BMC **and** Plaintiff) if a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d).

BMC argues that Plaintiff fails to allege that the interceptions were made for a criminal or tortious purpose, but BMC fails to grapple with Plaintiff's detailed allegations on precisely that question. As a threshold matter, "the phrase 'for the purpose of' does not require that a party act with knowledge that its intended use of the intercepted communication is illegal," that is, a "heightened willfulness requirement"; instead, the ECPA simply requires the "*mens rea*…of the underlying torts or crimes." *Kurowski v. Rush Sys. For Health*, 2024 U.S. Dist. LEXIS 126837, at *12-13 (N.D. Ill. July 18, 2024).[4] Here, that means BMC must have "actively chose[n] to employ the tracking technology on certain pages of its website that were likely to contain" information the disclosure of which is plausibly criminal or tortious. *Id.* at 14. Plaintiff meets that requirement—she alleges BMC decides what tracking technologies it uses, if any, on its website, and chose to implement them secretly. ¶¶ 57-60, 64-66.

[4] *Brahm v. Hosp. Sisters Health Sys.,* 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "plaintiff alleges that defendants intercepted patients' electronic communications for the purpose of making disclosures that violated HIPAA"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose" enough); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024).

2. Plaintiff Identifies Several Legal Bases for the Crime-Tort Exception.

Although BMC focuses on Plaintiff's allegations regarding HIPAA (MTD 6-7), Plaintiff also alleges BMC acted with tortious intent based upon the Massachusetts statutory and common law torts for which she asserts claims. ¶¶ 173-74, 184-202, 212-23.[5] The torts include intrusion upon seclusion and disclosure of private facts (codified by the Massachusetts Right to Privacy Act, ("MRPA")),[6] breach of fiduciary duty, and breach of confidence. Although the precise elements of those torts vary, the tortious purpose for each is the same—the intentional disclosure to third parties of communications in contradiction to BMC's own published policies and consumers' reasonable expectations of privacy. Those state law claims do not depend upon a HIPAA violation or any determination regarding the HIPAA-defined terms "PHI" or "IHII." Every Massachusetts court that has considered those claims in cases relating to tracking technologies has affirmed such claims. *See* §§ III-B, C, D, *infra*.

Plaintiff's well-pled allegations regarding those intentional torts (including the applicable *mens rea* for such torts[7]) satisfy the crime-tort exception for the ECPA's one-party consent rule. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (holding "tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same). Given these independent bases for tortious intent, the Court need not resolve HIPAA's scope to sustain the ECPA claim.

[5] ¶¶ 173-74 ("The party exception…does not permit a party…to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act…. BMC intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, violation of HIPAA and the FTC Act, **as well as the other causes of action set forth in this complaint**.") (emphasis added); ¶¶ 184-202, 212-23 (Massachusetts statutory and common law tort claims).

[6] The MRPA codifies common law torts and thus provides remedies for the "tort [for] invasion of privacy." *Transamerica Ins. Co. v. KMS Patriots*, 52 Mass. App. Ct. 189, 195-96 (App. Ct. 2001); *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rep. 87 (2007) (MRPA creates "statutory tort of invasion of privacy"); *Peckham v. Bos. Herald, Inc.*, 48 Mass. App. Ct 282, 283 (App. Ct. 1999) (MRPA creates a "tort claim of public disclosure of private facts"); *Commonwealth v. McCarthy*, 484 Mass. 493, 510 & n.18 (2020) (MRPA "creates a cause of action for tort liability").

[7] More precisely, the pleading of tortious intent is all that matters under the crime-tort exception under HIPAA. "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or torti ous." *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *12 (quotation omitted).

In any event, Plaintiff also alleges an improper purpose arising from BMC's HIPAA violations. As to those allegations, BMC contends (MTD 6-7) Plaintiff's HIPAA allegations are precluded by *Am. Hosp. Ass'n v. Becerra*, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024). BMC overstates *Becerra*'s significance. *Becerra* focused specifically on a December 2022 Department of Health and Human Services Bulletin ("HHS Bulletin"), and vacated only part of the HHS Bulletin. As to HIPAA itself, *Becerra* did not vacate HIPPA's statutory provisions—which is what Plaintiff cites in invoking the crime-tort exception (Plaintiff doesn't even reference the HHS Bulletin in her ECPA count). *See* ¶¶ 163-83. To the degree *Becerra*, beyond its holding vacating part of the HHS Bulletin, also construes HIPAA or the Privacy Rule, those constructions do not bind this Court or require that it ignore contrary persuasive authority construing HIPAA and the Privacy Rule to encompass the conduct Plaintiff alleges here.

Even as to the HHS Bulletin, *Becerra* didn't vacate it entirety. Instead, *Becerra* vacated only one part of *Becerra* relating to a so-called "Proscribed Combination" of an "IP address" and a public webpage "addressing specific health conditions or healthcare providers." It held that interception of those two facts, **standing alone**, is insufficient for a HIPAA violation. 2024 U.S. Dist. LEXIS 108847, at *6-7. Here, Plaintiff's allegations are not limited to that "Proscribed Combination."

HIPAA's express terms provide that it applies where "(1) the PHI relates to the individual's 'past, present, or future physical or mental health or condition,' their receipt of healthcare, and/or their payment for healthcare; and (2) the PHI 'identifies' the individual or could reasonably 'be used to identify' them." *Id.* at 36 (quoting 42 U.S.C. § 1320d(6)). As to the first prong, Plaintiff alleges more than what *Becerra* addressed—interceptions on public pages regarding medical conditions. She also alleges that BMC disclosed patient status to Google and Facebook by surreptitiously using tracking technologies on pages designed for patients—including pages used for making appointments, bill payments, and the BMC patient portal (*see* § II-A, C, *supra*). This important fact distinguishes this case from *Becerra* and many of the ECPA cases BMC cites. Notably, in a landmark decision against Facebook concerning Meta Pixel that construed HIPAA's statutory terms directly, the court held that "patient status is protected health

information" under HIPAA, and therefore, intercepted webpage communications "which show[] patient-status constitute protected health information." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 793. The court explained that pages showing "a user is about to log in to a healthcare provider's website" reveal "patient status." *Id.*[8] That is precisely what Plaintiff alleges here—BMC used tracking technologies on pages showing a user is about to log into the BMC patient portal (and that is among the pages Plaintiff accessed). Plaintiff's allegations regarding interception of patient status satisfy HIPAA's first prong.

As to the second prong ("could reasonably be used to identify" the patient), Plaintiff does not rely solely on an IP address (what *Becerra* addressed) but also browser fingerprints (which can confirm identity with 99.24% accuracy) and persistent identifiers assigned by Facebook and Google, and how the combination of those identifiers permits Google and Facebook to affirmatively identify individuals. ¶¶ 38, 73, 75-76, 80, 82, 136. Plaintiff alleges that this is the precise function of the tracking technologies' use of multiple forms of identifying information; the combination permits Google and Facebook to confirm identity with sufficient certainty to use the interceptions to inform individualized advertising. *See, e.g., Kurowski,* 2024 U.S. Dist. LEXIS 126837, at *17-19 (disclosure of IP addresses, together with browser fingerprints and other identifiers combined with substantive health information, violates HIPAA).

Consistent with the limited reach of *Becerra*, courts find HIPAA violations without reference to the HHS Bulletin and its "Proscribed Combination"; indeed, very few post-*Becerra* ECPA cases even discuss the case (BMC cites none). *See Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (holding *Becerra* does **<u>not</u>** preclude invoking HIPAA under the ECPA's crime-tort exception, reasoning that "Plaintiff's claims are not premised on a violation of HHS guidance, but rather are based on violations of various statutes and common law…. Thus, the HHS guidance being

[8] BMC's own cases confirm that interceptions on public pages reflecting patient status violate HIPAA. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("As other courts within this Circuit have acknowledged, the transmission of information submitted to a *private patient portal*—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (D. Or. Nov. 14, 2024) (affirming same rule); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("navigating to…a healthcare provider's patient portal differs from…general internet browsing…because it conveys a user's patient status").

vacated does not affect the merits of Plaintiff's allegations."); *Doe v. Bayhealth Med. Ctr. Inc.*, 2025 Del. Super. LEXIS 154, at *16-17 (Super. Ct. Apr. 2, 2025) (affirming ECPA claim, reasoning "the HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations"); *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *17-20 (finding HIPAA violation even though declining to rely on HHS Bulletin, given interceptions involved users' "status as a…patient" and identifiers other than IP address).

a. Plaintiff Alleges Crimes and Torts Independent of the ECPA Violation.

BMC is wrong (MTD 5-6) that Plaintiff fails to allege a tortious or criminal purpose "independent of" the interception. Plaintiff alleges that BMC injected the tracking technologies onto its website (the act giving rise to ECPA liability) for the purpose of disclosing the contents of the intercepted communications and facilitating their improper use by third parties, which violates HIPAA and statutory and common law torts. ¶¶ 5-6, 23, 60, 63, 118, 127, 136, 138, 167, 172. Such allegations support the crime-tort exception. *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *7-8 (a common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties"); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA…. Instead, R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* of the collected Private Information"); *Stein v. Edward-Elmhurts Health*, 2025 U.S. Dist. LEXIS 31273, at *12-17 (N.D. Ill. Feb. 21, 2015) (finding independent act based in part upon careful analysis of ECPA statutory text, observing "[c]ourts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception").[9]

[9] BMC's appellate authorities on an "independent act" requirement (MTD 5) involve factual situations much different than here, where a website operator disclosed intercepted communications to a third party; indeed, subsequent district court decisions applying those authorities have permitted claims to go forward on comparable facts. *See Caro v. Weintraub*, 618 F.3d 94, 96-97 (2d Cir. 2010) (cited by BMC; involving recording of audio conversation); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *7-14 (S.D.N.Y. Sept. 16, 2024) (applies *Caro*; affirms claim for tracking technology on healthcare provider website, holding "[t]he Complaint sufficiently alleges an independent action secondary to the interception"—the "use[]" of "the content of [the] communications [by] Facebook [and] Google"); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *12-23 (W.D.N.Y. Mar. 19, 2024) (same); *In re Google Inc.*, 806 F.3d 125 (3d Cir. 2015) (suit directly against interceptor rather than website operator); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 U.S. Dist. LEXIS 177625, *7-12 (E.D. Pa. Sep. 30, 2024) (applying *In re Google*; affirming ECPA claim relating to secret tracking technology use on healthcare provider website).

3. BMC's Commercial Motives Do Not Negate Its Tortious Purpose.

The fact that BMC also had a commercial motive (*see* MTD 6) does not immunize it from liability. "Many crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *16 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 28 (D. Minn. 2024)). "[N]othing in [the ECPA] requires that a party act with the *sole* purpose of committing the underlying crime or tort"; accordingly, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Id.; Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *18 (E.D. Va. Mar. 25, 2025) (rejecting identical argument, noting that "[c]ourts around the country…have upheld ECPA claims using the crime-tort exception where the alleged criminal purpose for the interception was a violation of HIPAA or a state health privacy law, despite the healthcare provider having an additional commercial, marketing, or advertising purpose"); *Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 134570, at *26 (S.D.N.Y. July 30, 2024) ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.").[10]

4. Plaintiff Alleges the Interception of the Contents of Her Communications.

BMC argues in a short paragraph that Plaintiff alleges no interception of the "contents" of any communication because she describes only "browsing information." MTD 8. Plaintiff, however, alleges interceptions that revealed her patient status, including through BMC's injection of hidden tracking technologies onto its patient portal, bill payment, and medical records pages. *See* § II-A, C, *supra*. Interceptions that disclose patient status disclose "contents" under the ECPA. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 (website communications involve "contents" if they reveal patient status); *M.G.*,

[10] *Mayer v. Midwest Physician Admin. Servs.,* LLC, 2025 U.S. Dist. LEXIS 60486, at *10-11 (N.D. Ill. Mar. 31, 2015) ("no defense to a HIPAA charge" supporting ECPA claim that hospital "wanted to make money by doing so"); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *18-19 ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose relating to HIPAA); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (same); *R.C.,* 733 F. Supp. 3d at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply…").

2024 U.S. Dist. LEXIS 166534, at *12 (same); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs revealing "patient status" are "contents").

Additionally, Plaintiff details in her complaint how BMC configured its website to use descriptive URLs, which reveal the substance of the information a consumer requests and BMC provides in response, and also to disclose webpage titles, which further reveal the substance of information communicated on particular pages. *See* §§ II-A, *supra.* BMC's suggestion that navigating through webpages cannot involve "contents" of communications "misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *In re Google*, 806 F.3d at 136. Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 796 ("descriptive URLs" are "'contents'").[11] Plaintiff's allegations regarding descriptive URLs and webpage titles satisfy the "contents" element.

With respect to this latter type of "contents," if BMC argues Plaintiff must identify her precise medical conditions and procedures she has obtained, that is wrong. *In re Meta Pixel Tax Filing Cases*., 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023) (rejecting similar argument that complaint "reveals little about the information that Plaintiff entered on its website") (citing *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023))). Plaintiff provides sufficient detail to provide BMC notice of the claims against it.

B. *Plaintiff States a Claim under the MRPA.*

The MRPA, M.G.L. c. 214 § 1B, codifies and broadens common law privacy torts. *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991) ("[T]he Legislature appears to have

[11] *See also Castillo* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" count as "contents"); *M.G. v. Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *12 (N.D. Cal. Sept. 16, 2024) (same); *R.C.*, 733 F. Supp. 3d at 902 ("descriptive URLs" are contents); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same).

framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis"). Plaintiff invokes two theories of MRPA tort liability: (i) intrusion upon seclusion and (ii) public disclosure of private facts, ¶¶ 186-90, both of which the Massachusetts Supreme Judicial Court ("SJC") has held are within the MRPA's "broad" terms, *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

Citing various Massachusetts MRPA cases for only general propositions, BMC ignores the most factually on-point authorities. Four Massachusetts Superior Court justices and one federal judge have concluded that the surreptitious use of tracking technologies states a claim for violation of the MRPA, including in a case against BMC itself. *Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024)[12]; *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 44 (motion to dismiss decision and transcript attached as **Exhibit 2**) (plaintiff "states a viable claim for invasion of the right of privacy" under MRPA based on the same allegations as those here). The SJC has also "emphasize[d]" in a case similar to this one "that the Legislature has provided…statutory and common-law protections…directly applicable to misrepresentations or misuse of private medical information" that are likely "cognizable" under the facts alleged here, including the MRPA. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849-50 (2024). **<u>There is no contrary MRPA authority</u>**.

1. <u>Plaintiff's Allegations Regarding Her Own Interceptions Are Sufficient.</u>

BMC argues (MTD 9-10) that Plaintiff's MRPA claim fails because "she has not alleged *anything* with respect to her *own* use of the website." This is flatly false, as Plaintiff explains above. *See* § II-C, *supra.*

[12] BMC attempts to distinguish *Tenet* as not having the "benefit of additional case law, like *Becerra*." MTD 10 n.7. There's no suggestion in *Tenet*, however, that **<u>any</u>** claims depended upon a HIPAA violation, which is what *Becerra* addresses. HIPAA isn't even referenced in connection with the discussion MRPA claims. *Tenet*, 2024 U.S. Dist. LEXIS 73596, at *16-18. And, to be clear, Plaintiff's MRPA claim doesn't reference or rely upon HIPAA. ¶¶ 184-94. No MRPA case holds or even suggests the MRPA provides a claim only if there is a HIPAA violation (or violation of the HHS Bulletin). In fact, *Alves* affirmed such a claim against an ordinary retailer not involved in healthcare (BJ's Wholesale Club), underscoring that the MRPA applies broadly to surreptitious interceptions of communications, particularly where such interceptions contradict a company's promises made in published policies. 2023 Mass. Super. LEXIS 59, at *13-17. Similarly, BMC's charge that *Tenet* involved no "hypothetical allegations" ignores that Plaintiff alleges actual interceptions here, similar to those in *Tenet*. *See* § II-C, *supra.*

Plaintiff alleges specific pages she visited (including the appointment request page and patient portal) and explains how her communications were intercepted on those pages. *Id.* Although she does not divulge her medical procedures or identify her doctors, it is simply not the case that Plaintiff must disclose such information to put BMC on notice, consistent with Rule 8, of the claims against it. *See* § III-A-4, *supra.*[13]

BMC's charge that "Plaintiff has not alleged facts that could establish that her web browsing history is clearly traceable to her" is likewise simply untrue. Plaintiff alleges precisely how the tracking technologies are designed to enable Google and Facebook to associate the intercepted communications with individuals' real-world identities; indeed, that is how Google and Facebook derive value from the tracking technologies even though website owners do not pay to use the technologies. Google and Facebook make their own separate commercial use of the intercepted communications. *See* § II-A, *supra.*

2. Plaintiff Adequately Alleges Intrusion upon Seclusion.

BMC ignores controlling precedent relevant to Plaintiff's intrusion upon seclusion claim. In particular, the SJC has held that allegations of "electronic surveillance" state an MRPA claim for intrusion upon seclusion, and whether such surveillance violates the statute in a particular case "presents a question of fact." *Polay*, 468 Mass. at 382-84 (2014). BMC argues (MTD 10) that any communications on a "public website" are beyond the MRPA's scope. Again, controlling precedent indicates otherwise. The MRPA tort for intrusion upon seclusion is broader than the common law (as reflected in some case law from other states that BMC cites)[14] and applies even where "an individual's conduct is observable by the public"

---

[13] BMC's citation to *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023), to suggest Plaintiff must disclose her actual medical condition to be a plaintiff is negated by a later decision in that same case, where the court affirmed the sufficiency of allegations very similar to those here, which described the types of information intercepted without disclosing the names of the plaintiff's doctors or her specific medical conditions. *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *7-8 (N.D. Ill. Dec. 11, 2023). Similarly, BMC's citation to *Yaghoobi v. Tufts Med. Ctr., Inc.*, 2025 U.S. Dist. LEXIS 6060 (D. Mass. Jan. 13, 2025), as a case where a plaintiff pled "no facts revealing what information was shared" involved much different facts. There, the plaintiff merely inferred the hospital at which she was a resident shared confidential information because the police performed a wellness check on her, *id.* at *2-3, 12-13; in contrast, here, no such inferential leaps are necessary because the tracking technologies—implemented through computer code—work in predictable ways, and therefore, Plaintiff can accurately allege that her communications were intercepted. *See* §§ II-A, C, *supra.*

[14] There is no such black-and-white rule even under the common law. *See, e.g., M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *16-17 (D. Or. Aug. 28, 2024) (affirming intrusion claim based on tracking technologies used on public parts of healthcare website); *Doe v. Bon Secours Mercy Health*, 2021 Ohio Misc. LEXIS 3985, at *12 (Ct. Com. Pl. Nov. 22, 2021) (same); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *16-17 (Super. Ct. Oct. 3, 2024) (same).

if the "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." *Id.* at 384. Every court to apply *Polay* to website tracking technologies has found it supports the claim Plaintiff asserts here, including in a case against BMC. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17.[15]

BMC also ignores critical allegations—its privacy policy falsely promised that BMC "will not intentionally share" website communications with "a third-party entity," among other similar false promises, reinforcing consumer expectations that their communications would be private. ¶¶ 25-34. Such false promises bolster Plaintiff's claims for intrusion upon seclusion and distinguish this case from those where courts found users lacked a reasonable expectation of privacy. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion upon seclusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion upon seclusion claim where Google's practices contradicted its own disclosures).[16]

3. <u>Plaintiff Adequately Alleges Disclosure of Private Facts.</u>

As to Plaintiff's claim for disclosure of private facts, BMC argues the communications at issue were not personal or intimate enough.[17] Here, Plaintiff alleges communications with healthcare providers, for which consumers had a reasonable expectation of privacy, were shared with third-party technology

[15] BMC's citation to two MRPA cases (MTD 9) that it contends addressed "situations that are much more sensitive than search [sic] of a public website" are distinguishable in that they involve no allegations of any undisclosed eavesdropping. In *Commonwealth v. McCue*, which involved an officer listening to a patient-doctor communication in a hospital, the court explained that "there is little reason to think [the officer's] presence was unknown to the defendant insofar as he was in full uniform and standing only five feet away," permitting the "reasonable inference that the defendant was aware of the trooper's presence." 2006 Mass. App. Unpub. LEXIS 47, at *3-4 (App. Ct. Nov. 7, 2006). Needless to say, Plaintiff's allegations here are the exact opposite: the technology was hidden by design, and BMC utterly failed to disclose it. *Commonwealth v. Welch* is even further afield; the case is not even an MRPA case, but in any event, the "defendant" there "appears to have invited an officer to enter his ICU room," thus undermining his claim of privacy. 487 Mass. 425, 432 (2021).

[16] *See also Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim where company's "privacy disclosures…failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (Cir. Ct. Aug. 5, 2020) (tracking technologies contradicted "express promises of privacy to patients"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" support invasion of privacy claim).

[17] BMC's citation to *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508 (1984), to argue "Massachusetts courts have construed [the MRPA] <u>**narrowly**</u>" (MTD 9) (emphasis added) is utterly bizarre, given that *Bratt* says no such thing and provides an example of the MRPA being construed <u>**more broadly**</u> than the common law by holding the MRPA does not require dissemination of private information to the "public at large," as the Restatement version of the tort describes. 392 Mass. at 519 & n.15.

companies that used the communications for individualized advertising. If anything, BMC's deployment of hidden tracking technologies on pages that reveal patient status makes the facts here more egregious than cases where courts have sustained MRPA claims for disclosures from medical websites. *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Tenet Healthcare*, 731 F. Supp. at 151-52.[18]

Plaintiff addresses BMC's argument on damages as to her MRPA claim below. *See* § III-G, *infra*.

C. *Plaintiff States a Claim for Breach of Fiduciary Duty.*

BMC argues (MTD 11-12) that Plaintiff states no claim for breach of fiduciary duty because a patient's interaction on the BMC Website is not "within the scope" of any fiduciary duty BMC owes to patients. BMC's primary authority on this "scope" argument—*Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003)—is distant from the facts here; the conduct giving rise to purported liability—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given that the website is designed for use by patients as patients. ¶¶ 18-20.[19] Plaintiff's allegations fall well within the scope of any duty, given BMC's injection of hidden third-party tracking code onto pages designed specifically for patients, including the patient portal. ¶¶ 13, 110-13.

Notably, in *Emerson*, the court, applying Massachusetts law, rejected the same argument—that patient communications on a hospital's website are not sufficiently related to the fiduciary doctor/patient relationship. *Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7. Every other Massachusetts court that has considered a fiduciary duty claim for surreptitious use of tracking technologies has affirmed such a claim. *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners*

---

[18] Even under the more stringent common law rule, courts affirm such claims on similar facts. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming disclosure of private facts claim based on secret use of tracking technologies); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (same); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *17-18 (same); *R.C.*, 733 F. Supp. 3d at 888-95.

[19] BMC's only other Massachusetts authority that even remotely touches upon medical issues, *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rep. 87 (Super. Ct. Aug. 24, 2007), involved much different facts. In *Kelley*, a pharmacy shared a list of consumers receiving certain prescriptions to a vendor to send mailings paid for by a pharmaceutical company. No information was provided to the pharmaceutical company, and the vendor received any information under a confidentiality agreement that forbade it from using the information for other purposes. *Id.* at *5-15. That is quite different than here, where third parties such as Google and Facebook were free to use the intercepted communications **for their own commercial purposes**. Moreover, there was no suggestion in *Kelley* that consumers were deceived, in contrast to here, where BMC employed deceptive privacy disclosures to consumers that indicated BMC would not engage in the precise conduct in which it engaged.

*Healthcare* (margin order, attached as Ex. 2) (affirming breach of fiduciary duty claim); *Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" for secret use of tracking technologies).[20]

BMC also reprises its argument that Plaintiff's allegations are mere "hypotheticals," ignoring Plaintiff's allegations of the specific webpages she visited and how her communications were intercepted. *See* § II-C, *supra*. BMC similarly argues (MTD 12) that BMC "could not even attribute" Plaintiff's communications "to her." Plaintiff's claims focus on the attribution of her communications **by Google and Facebook,** and the tracking technologies were designed to permit such third parties to associate the intercepted communications with particular individuals. *See* § II-A, *supra*. In any event, even if it were relevant whether BMC could also identify the users whose communications were intercepted, BMC plainly could identify Plaintiff and other users, given that BMC used the tracking technologies to intercept communications connecting to the patient portal and making appointments, ¶¶ 12-13, 83, 106-13, which are functions that require users to log in or otherwise identify themselves to BMC.

Plaintiff responds to BMC's damages argument in Section III-G, *infra*.

D. *Plaintiff States a Claim for Breach of Confidence.*

BMC argues (MTD 15) that "Massachusetts courts have not recognized" a claim for breach of confidence. In the next breath, it acknowledges *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985), which recognized precisely such a cause of action, holding "a duty of confidentiality arises from the physician-patient relationship, and…a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort." *Alberts* announced a new cause of action, drawing upon several sources rather than merely construing the tort of breach of fiduciary duty. *See A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (affirming breach of confidence claim under Massachusetts law in addition to breach of fiduciary duty claim); *Cooper*, 2024 U.S. Dist. LEXIS 134750, at *32-33 (rejecting argument that breach of physician-patient confidentiality claim is duplicative of breach of fiduciary duty and other common law claims).

[20] *See also Shedd v. Sturdy Mem. Hosp.*, 2022 Mass. Super. LEXIS 7, at *24-25 (Super. Ct. Apr. 5, 2022) (affirming breach of fiduciary claim for healthcare provider's "failure to protect highly confidential information" from disclosure); *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Cooper*, 2024 U.S. Dist. LEXIS 134570, at *31-34 (same).

BMC's only other argument is its refrain that Plaintiff fails to assert a claim under *Alberts* because she relies only on "hypotheticals." MTD 15. However, as detailed above, this is untrue; Plaintiff actually, not "hypothetically," communicated with BMC through specific pages on which BMC injected hidden code for tracking technologies, causing the interception of those communications. *See* § II-C, *supra.*

E. *Plaintiff States a Claim for Negligence.*

On Plaintiff's negligence claims, BMC again ignores on-point authority affirming the same Massachusetts claim on substantively the same facts. *Tenet Healthcare*, 731 F. Supp. 3d at 149 (affirming negligence claim for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same); *see also Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies). In any event, its arguments each lack merit.

***Plaintiff Alleges a Duty.*** The scope of a duty giving rise to a negligence claim may be informed by policies underlying privacy-related statutes, even if not defined directly by them in terms of *per se* liability, particularly in areas of negligence law in which standards are continuing to develop. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990) (even though "violation of a statute does not by itself establish breach of duty," it does provide "some evidence of the defendant's negligence") (quotations omitted).[21] That is what Plaintiff presents here—a duty informed by privacy laws and norms and considered with ethical standards. ¶ 191; *Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 617, 627 (E.D. Tex. 1998) (holding "ethical duties [relating to] the accepted standards of medical care which a reasonable health care provider would follow…relevant to Plaintiffs' negligence and gross negligence claims."). Plaintiff sufficiently alleges a duty; the precise contours of that duty should be informed by discovery.

***Plaintiff Alleges a Breach of Duty.*** BMC's four-line argument on breach (MTD 14) assumes Plaintiff's negligence claim depends upon a HIPAA violation and that *Becerra* controls the scope of

[21] *See also Lamarr*, 2024 Ind. Super. LEXIS 107, at *11-12 (statutory duties under FTC Act and HIPAA can "inform" scope of duty at common law even without negligence *per se*). BMC's authorities are either unpersuasive or not to the contrary. *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719-720 (2014), rejects a rule of *per se* liability but confirms statutes are "relevant" to defining the scope of duties that may be vindicated through a claim for negligence. *Williams v. TMC Health*, 2024 U.S. Dist. LEXIS 178452, *18-20 (D. Ariz. Sept. 30, 2024) likewise considered an assertion of *per se* duty, rather than addressing whether HIPAA might inform the scope of a duty defined at common law, and in any event, does not construe Massachusetts law.

negligence law. Plaintiff **does** allege a HIPAA violation, even assuming *Becerra* is informative on HIPAA's scope (*see* § III-A-2 *supra*), but in any event, Plaintiff alleges additional statutory and other sources that inform the contours of a duty for a negligence claim (including state medical privacy law, *see* ¶¶ 207-08). *Becerra*, therefore, is not relevant Plaintiff's negligence claim. *See Partners Healthcare*, Ex. 2 at 39-40 ("I agree with you that I think HIPAA is a bit of a red herring in this proceeding and in these arguments…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake.").[22]

***Damages.*** Plaintiff addresses BMC's argument on a supposed lack of damages below. *See* § III-G, *infra*.[23] BMC's argument on the economic loss doctrine ignores that Massachusetts law permits recovery of economic losses in negligence cases where the duty arises from a special relationship between the parties—as it does here, given the relationship between patients and healthcare providers. *Tenet*, 2024 U.S. Dist. LEXIS 73596, at *9 (rejecting economic loss doctrine argument in case involving tracking technologies on medical website, given special relationship between healthcare consumers and providers); *Portier v. NEO Tech. Sols.*, 2019 U.S. Dist. LEXIS 227494, at *47-60 (D. Mass. Dec. 31, 2019) ("Massachusetts permits recovery of purely economic losses for a range of torts" where there is a "special relationship" between the parties) (collecting authorities); *Shedd*, 2022 Mass. Super. LEXIS 7, at *20-23 (holding economic loss doctrine does **not** apply to failure to protect "confidential medical information").

F. *Plaintiff States a Claim for Breach of Contract.*

BMC's arguments on breach of contract ignore its privacy policy, through which it made false promises to consumers about its disclosure of communications to third parties. There is no doubt that BMC assented to the terms of its own policies (it drafted them), and it is plausible that Plaintiff assented too, given her use of the patient portal, which almost certainly involved assent to BMC's policies.[24]

[22] *See also Bayhealth*, 2025 Del. Super. LEXIS 154, at *21 (describing "growing trend across the country" of affirming negligence claims based on tracking technologies on medical websites).

[23] BMC's argument (MTD 14) that Plaintiff alleges no "actual misuse" of her intercepted communications ignores her express allegations that they were disclosed to Google and Facebook, and used by those companies, without her knowledge or consent.

[24] Although it is not possible without discovery to confirm how BMC required assent to the relevant policies as part of the patient portal sign-up process (the sign-up process is not archived on the Wayback Machine), such clickwrap agreements are ubiquitous. Indeed, it is startling that BMC complains (MTD 16) that if Plaintiff's allegations are credited, "everyone who

Contrary to BMC's argument on mutual assent and consideration (MTD 16), that Plaintiff "voluntarily" used the website is beside the point; the interceptions by Google and Facebook were not voluntary and were "required" in that BMC's conduct forced the interceptions to occur.

On top of that, even absent an express contract, a contract may be implied at law to confer a remedy, as confirmed by the **only** Massachusetts authorities to have considered the same claims. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies).[25]

Finally, BMC's argument on damages is addressed in the following section.

G. *Plaintiff Sufficiently Alleges Damages.*

BMC argues for several (but not all) of Plaintiff's claims (MTD 11, 12, 14, 18) that Plaintiff fails to allege "damages." BMC's arguments depend on its pretending Plaintiff's summary of damages (¶ 154) are her only allegations, ignoring detailed allegations regarding the significant economic value the intercepted communications have to consumers, BMC, and the third-party eavesdroppers and advertisers that monetize the intercepted communications—that is, that there is an established, mature market for the intercepted communications.[26] Such allegations are sufficient at this stage. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" are sufficient under Massachusetts law); *Meta Pixel Healthcare*, 2024 U.S. Dist. LEXIS 15391, at *12 (allegation, even without quantification or expert testimony, that "Meta unjustly profited from the data taken," is

---

visits a website would be in a contractual relationship with its owner," (MTD 16) given that this is **precisely** what businesses argue when there are terms in their online policies that benefit the business, such as arbitration.

[25] Well-reasoned authorities from other jurisdictions are in accord, particularly where a published privacy policy includes false promises of non-disclosure. *Lamarr*, 2024 Ind. Super. LEXIS 107, at *20-21 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Bon Secours*, 2021 Ohio Misc. LEXIS 3985, at *13-14; *Elkins v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

[26] ¶¶ 21-24, 30 (describing value of privacy to consumers); ¶¶ 178, 181 (describing "commercial advantage" BMC obtained in exchange for permitting Google and Facebook to eavesdrop on patient communications, resulting in increased "revenue" for BMC); ¶ 38-40 (describing how Meta Pixel contributes to building of individual profiles from which "Facebook derives most of its revenue"); ¶¶ 45-47, 53 (Google Analytics key part of building "detailed profiles on individuals" from which "Google derives a substantial portion of its revenue"); ¶¶ 74, 87-88, 91-93, 95, 99, 101, 103-04, 107, 109, 112 (detailing how Google and Facebook extracted commercial value from the information intercepted through the tracking technologies).

sufficient); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-24 (allegations of "loss of privacy," "diminution in value," and "loss of the benefit of [the] bargain" sufficient even if not quantified; "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have"); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (similar); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (similar).[27]

H. *Plaintiff States a Claim for Unjust Enrichment.*

BMC's sole argument on unjust enrichment is that Plaintiff has an adequate remedy at law. All Massachusetts courts to have considered this claim under the same substantive facts have affirmed the claim, including rejecting the precise argument BMC makes here. *Tenet Healthcare*, 731 F. Supp. 3d at 150-51 (affirming unjust enrichment claim, reasoning a plaintiff "may plead" unjust enrichment and legal remedies "in the alternative"); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9-14 (affirming unjust enrichment claim under Massachusetts law); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (same); *see also Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on hidden tracking technologies). BMC's own authority recognizes that an unjust enrichment may proceed alongside other claims, including contract claims, where potential ambiguity must be resolved. *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020) (recognizing First Circuit cases permitting unjust enrichment to be pled in alternative).[28]

## IV. CONCLUSION

The Court should deny BMC's motion to dismiss.

---

[27] BMC's citation to *Reidy v. UMass Memorial Medical Center, Inc.* each time it makes a damages argument illustrates how Plaintiff's allegations are sufficient. *Reidy* involved a data breach—not of healthcare communications but of a fundraising database—in which the court held damages were "speculative" because the plaintiff did not know how or whether the breached data would be misused. 2021 Mass. Super. LEXIS 1660, at *1-5 (Super. Ct. June 17, 2021). In contrast, here, Plaintiff expressly alleges precisely *how* the third parties monetize the intercepted communications and the market for such data. Similarly, *Doe v. CVS Pharmacy* involved a situation in which the plaintiff believed her medical information **might have been** disclosed to others because others' information had been disclosed to her due to an app error. 2021 Mass. Super. LEXIS 494, at *1-2 (Super. Ct. Aug. 3, 2021). That is a far cry from the facts here, where Plaintiff alleges a mature market for the commercial exploitation of intercepted communications, and Plaintiff alleges precisely how the interceptions in fact occurred.

[28] The scope of an unjust enrichment claim, including the remedy-at-law element, is a matter of substantive state law, on which this court should follow Massachusetts authority. *See also Zelby Holdings, Inc. v. VideogeniX, Inc.*, 92 Mass. App. Ct. 86, 92-93 (App. Ct. 2017) ("Zelby properly pleaded alternative bases for relief, and dismissal of its unjust enrichment claim would be inappropriate as it presupposes the existence of a valid underlying contract."). Other states are in accord. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *21-23; *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *21-22; *Lamarr*, 2024 Ind. Super. LEXIS 107, at *21-22 (same); *Elkins*, 2024 Ind. Super. LEXIS 340, at *10.

Dated: April 11, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: April 11, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely