**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ELIZABETH NOVA, for herself and the Class,** *Plaintiff,* | : | |
| **v.** | : | **C.A. NO.: 1:25-cv-10105** |
| **BOSTON MEDICAL CENTER CORPORATION,** *Defendant.* | : | |

**DEFENDANT BOSTON MEDICAL CENTER CORPORATION'S**
**REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Linn F. Freedman, BBO #639564
Wystan M. Ackerman, BBO #651086
Wm Maxwell Daley, BBO #694729
**ROBINSON & COLE LLP**
One Boston Place, 26th Floor
Boston, Massachusetts 02108
Tel.: 617-557-5900
Fax: 617-557-5999
lfreedman@rc.com
wackerman@rc.com
wdaley@rc.com

*Attorneys for Defendant Boston Medical Center Corporation*

# TABLE OF CONTENTS


**Page**

**TABLE OF AUTHORITIES** ..... ii

**I. PLAINTIFF'S ATTEMPTS TO SAVE HER ECPA CLAIM FAIL** ..... 2

**A. Plaintiff's Attempt to Invoke the Crime-Tort Exception Falls Flat** ..... 2

**B. Plaintiff Alleged the Tracking was done for Commercial Purposes** ..... 8

**C. Plaintiff does not Allege that Any "Contents" were Intercepted** ..... 9

**II. THE AMENDED COMPLAINT DOES NOT STATE A PRIVACY ACT CLAIM** ..... 10

**III. PLAINTIFF'S PURPORTED BREACH OF CONFIDENCE CLAIM FAILS** ..... 12

**IV. PLAINTIFF FAILED TO PLAUSIBLY ALLEGE ANY FIDUCIARY DUTY** ..... 13

**V. PLAINTIFF'S NEGLIGENCE CLAIM FAILS** ..... 15

**VI. PLAINTIFF DOES NOT ALLEGE ANY CONTRACT** ..... 17

**VII. *TOMASELLA* BARS PLAINTIFF'S UNJUST ENRICHMENT CLAIM** ..... 18

**VIII. PLAINTIFF'S ARGUMENTS REGARDING DAMAGES ALL FAIL** ..... 19

**CONCLUSION** ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....................13

*American Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. Jun. 20, 2024) ....................7, 13, 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................11, 16, 17

*Bennett v. Eagle Brook County Store, Inc.*,
557 N.E.2d 1166 (Mass. 1990) ....................15, 16

*Boddie v. ABC*,
881 F.2d 267 (6th Cir. 1989) ....................5

*Bonewit v. New-Indy Containerboard LLC*,
2024 WL 4932186 (D. Mass. Dec. 2, 2024) ....................19

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................4, 5, 6, 7

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ....................9

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................9

*Cordeiro v. Grep Atl., LLC*,
2025 WL 889460 (D. Mass. Mar. 21, 2025) ....................18

*Doe v. Bayhealth Med. Ctr., Inc.*,
2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ....................16

*Doe v. Bos. Med. Ctr.*,
2023 WL 7105628 (Mass. Super. Ct. Sept. 14, 2023) ....................11

*Doe v. Emerson Hosp.*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023) ....................9, 11, 14, 18, 19

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ....................7

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ....................12, 20

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................11, 14, 16, 18, 19

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................6

*Elkins v. Bartholomew Cnty. Pub. Hosp.*,
2024 WL 5471834 (Super. Ct. Dec. 16, 2024) ....................16

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)....................6, 7, 19

*In re Google Inc. Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................4, 5, 6, 9

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................7, 13

*United States ex rel. Hitrost, LLC v. Study Across the Pond, LLC*,
2025 WL 871024 (D. Mass. Mar. 19, 2025)....................18

*J.H. Desnick v. ABC*,
44 F.3d 1345 (7th Cir. 1995) ....................5

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)....................6, 7

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
563 U.S. 1 (2011)....................4

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020)....................11

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003) ....................14, 17

*Lamarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024) ....................16

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................4

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ....................5

*M.G. v. Therapymatch*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ....................9

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) ....................5

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ....................19

*Miller v. Nichols*,
586 F.3d 53 (1st Cir. 2009) ....................15

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ....................6

*Nelson v. Salem State Coll.*,
845 N.E.2d 338 (Mass. 2006) ....................10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................8, 9, 19

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................1, 12, 19

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................12

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025) ....................7, 8

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ....................2

*Planned Parenthood Fed. Of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................5

*Portier v. NEO Tech. Sols.*,
No. 3:17-cv-30111 (TSH), 2019 WL 7946103 (D. Mass. Dec. 31, 2019) ....................16, 17

*In re Practicefirst Data Breach Litig.*,
2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ....................20

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................12, 20

*Reidy v. Umass Memorial Medical Center, Inc.*,
2021 WL 6777622 (Mass. Super. Ct. June 17, 2021)....................20

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025)....................8

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
16 N.E.3d 1044 (Mass. 2014)....................15, 16

*Shedd v. Sturdy Mem'l Hosp., Inc.*,
2022 WL 1102524 (Mass. Super. Ct. Apr. 5, 2022)....................17

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................11

*Squeri v. Mount Ida College*,
954 F.3d 56 (1st Cir. 2020)....................10

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025)....................12

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999)....................5

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020)....................18, 19

*U.S. v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998)....................3

*United States v. Cassiere*,
4 F.3d 1006 (1st Cir. 1993)....................3

*United States v. Dale*,
991 F.2d 819 (D.C. Cir. 1993), cert. denied 510 U.S. 1030 (1993)....................5

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) (Gorton, J.)....................2, 3, 4, 8, 9

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986), aff'd, 813 F.2d 477 (1st Cir. 1987)....................3, 4

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024)....................10

*Webb v. Injured Workers Pharmacy, LLC*,
2023 WL 5938606 (D. Mass. Sept. 12, 2023)....................17, 18

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....................15, 16

*Willitts v. Engie N. Am. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021) ........ 13

*Yaghoobi v. Tufts Med. Ctr., Inc.*,
2025 WL 81591 (D. Mass. Jan. 13, 2025) ........ 11, 12

**Statutes**

18 U.S.C. § 2511 ........ *passim*

Electronic Communications Privacy Act of 1986 ........ 2, 3, 4, 7, 9

Health Insurance Portability and Accountability Act of 1996 ........ 7, 8, 15

M.G.L. c. 214 § 1B ........ *passim*

The Massachusetts Wiretap Act of 1968 ........ 9

Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint ("Opposition" or "Opp.," ECF Doc. 21) vastly overstates Plaintiff's *factual* allegations. She cannot overcome the applicability of the ECPA's one-party consent rule, her complete lack of any damages, and various other pleading deficiencies.[1] The Opposition simply ignores applicable Massachusetts and First Circuit authorities, while exaggerating Plaintiff's alleged use of BMC's Website and the types of information conveyed by browsing or searching. Plaintiff suggests that the relevant technology "revealed the substance of the information communicated," Opp., p. 2, but it is only the title of a webpage. Similarly, her focus on the MyChart patient portal, Opp., pp. 2–3, is misplaced. Plaintiff alleges only that pixel technology could track that a device accessed the login page, Am. Compl., ¶ 113—nothing more. Plaintiff does *not* allege that any information in the MyChart portal was disclosed. Moreover, a device could access the login page by accident, out of curiosity, or for someone else. Meta or Google would not know that Plaintiff (or anyone else) was or is a patient of BMC and would not have access to confidential medical information.

While Plaintiff goes to great lengths to reframe her meager allegations regarding her actual use of the Website (Opp., at 3–4), only ¶ 12 vaguely describes *her actual use* of the Website and does not plausibly allege the disclosure of any confidential information. While Plaintiff claims that other paragraphs are presented for "illustrative" purposes, she *expressly* alleges that the "examples presented . . . do not necessarily reflect webpages Plaintiff personally visited," ¶ 84. Such allegations fail to state a claim, as numerous courts have held, and as explained below. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1085 (W.D. Wash. 2024) ("Plaintiff has made no allegations of her interactions with Defendant's websites, let alone any allegations showing that her interactions plausibly related to the provision of healthcare or were shared by

---

[1] Terms defined in BMC's Memorandum of Law (ECF Doc. 18) have the same meaning herein.

Defendant. In fact, Plaintiff's allegations as to herself are disconnected from any allegations of information sharing by Defendant. Her claims cannot survive absent this factual support").

## I. PLAINTIFF'S ATTEMPTS TO SAVE HER ECPA CLAIM FAIL

### A. Plaintiff's Attempt to Invoke the Crime-Tort Exception Falls Flat

Acknowledging that BMC's consent alone is sufficient to preclude liability under the ECPA—a fact which wholly distinguishes this case from *In re Pharmatrak, Inc.*, 329 F.3d 9, 20 (1st Cir. 2003) ("the client pharmaceutical companies did not give the requisite consent")—Plaintiff argues that she has sufficiently pled the exception to the one-party consent rule found in 18 U.S.C. § 2511(2)(d) (consent rule does not apply "if the recording party intercepted the communication 'for the purpose of committing any criminal or tortious act.'"). However, the ECPA only applies the exception where a "communication is intercepted *for the purpose of* committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d) (emphasis supplied). Precedent from this Court rejects Plaintiff's broad reading of the exception, which is to be "construed narrowly." *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (Gorton, J.) (citations omitted). "An impermissible purpose is properly confined to situations where the recording party *intended to harm the recorded party, either through blackmail, threats or public embarrassment*." *Id.* (emphasis supplied); *see also Pharmatrak, Inc.*, 329 F.3d at 23 ("Such conduct or the causing of the result must have been the person's conscious objective."). To invoke the crime-tort exception, Plaintiff must plausibly allege that BMC, a non-profit healthcare institution, installed the subject code on its website with the *primary* motivation of, or as a determinative factor, committing a criminal or tortious act. However, the Amended Complaint *expressly* alleges that this conduct was undertaken for "commercial" and "marketing purposes," Am. Compl., ¶¶ 23–24, 219, which are

neither criminal nor tortious. Plaintiff's conclusory and unsupported attempt to impute a criminal or tortious purpose for commonly-used code on a public website must fail.

For decades, courts in the First Circuit have repeatedly rejected Plaintiff's overreaching interpretation of the crime-tort exception, which would invoke it any time the alleged interception could be framed as constituting a tort or violating criminal law. *See, e.g.*, *United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993) (exception did not apply where the recording was not made "to blackmail [the victim] or as part of a conspiracy"); *McHugh*, 57 F. Supp. 3d at 100 ("impermissible purpose exception within § 2511(2)(d) 'is to be construed narrowly'" and "[a]n impermissible purpose is properly confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment" meaning that "§ 2511(2)(d) turns on the *purpose* for recording the communication" (citation omitted)); *U.S. v. Kovolas,* 1998 WL 452218, *4 (D. Mass. July 27, 1998) ("Kovolas argues that because the recording itself was made in violation of state law, it was made for the purpose of violating state law" but "[t]he superficial logic of this argument has been rejected [because] . . . if state law were to render tortious conduct as defined by the very act of recording that Congress sought to permit, the provisions of § 2511(d) would be rendered meaningless."); *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987) ("§ 2511(2)(d) forbids the recording of communications between private persons by or with the consent of one of the parties when it is shown either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious . . . act").[2]

[2] When the Court addressed § 2511(2)(d) in *Vest*, it also included any "other injurious act" in addition to criminal or tortious conduct, 639 F. Supp. at 902, but Congress later amended the ECPA to its current form, narrowing its application to instances where the "purpose" of the alleged interception was to commit a separate criminal or tortious act.

In her Opposition, Plaintiff does not even *attempt* to address these cases, failing to cite even a single First Circuit or District of Massachusetts case that would support her expansive reading of § 2511(2)(d). *See* Opp., pp. 5–9. Rather, she relies on conflicting, out-of-circuit precedent that cannot be harmonized with how First Circuit courts have addressed the "narrow" exception in § 2511(2)(d). *See McHugh*, 57 F. Supp. 3d at 100; *Vest*, 639 F. Supp. at 907 (while one motive may have been to advance a criminal conspiracy, the other was to protect himself, which was "not done for the purpose of causing injury in the relevant legal sense" because "[i]njury is not the actor's objective but only an incidental consequence of an act done for a permissible purpose").[3] Plaintiff's attempts to bypass precedent from this Court must fail and the ECPA claim should be dismissed.

Consistent with the First Circuit cases, the Second Circuit has also stressed that "Congress chose the word 'purpose' for a reason" and "the offender must have as her objective a tortious or criminal result." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). If "Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications resulting in a tortious or criminal act," without any reference to the "purpose"—but Congress intentionally chose to limit the exception's application to instances where the "purpose" of the interception was to commit a crime or tort. *See id.*; *In re Google Inc. Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[P]laintiffs point to no legal authority providing that the exception to § 2511(2)(d) is triggered when, as here, the tortious conduct is the alleged wiretapping itself. By contrast, all authority of which we are aware

---

[3] Because the ECPA imposes criminal liability, any ambiguity regarding what constitutes a criminal or tortious "purpose" must be interpreted consistent with the "rule of lenity," which "leads [the court] to favor a more lenient interpretation of a criminal statute." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.").

indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits").

Appellate decisions nationwide have consistently required an independent tortious or criminal *intent* separate and apart from the alleged interception, rather than allowing the exception to apply, as Plaintiff argues, whenever a wiretap is a tort or violates state law. *See, e.g.*, *In re Google Inc. Priv. Litig.*, 806 F.3d at 145 ("As the plaintiffs plead no tortious or criminal use of the acquired internet histories, § 2511(2)(d) is not inapplicable on the basis of the criminal-tortious purpose exception"); *Caro*, 618 F.3d at 100 ("[plaintiff] does not allege an independent tort that could provide the basis for the tortious intent necessary to bring a claim"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) ("the complaint does not allege that defendants intercepted a communication for the purpose of committing any criminal or tortious act"). These cases support BMC's reading of § 2511(2)(d) and make clear why the crime-tort exception does not apply here, where the alleged crime or tort is *the interception itself*. *See Planned Parenthood Fed. Of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022) (requiring an "independent criminal or tortious purpose at the time the recording was made").[4]

[4] *See also Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("'focus is not upon whether the interception itself violated another law; it is upon whether the purpose for interception—its intended use—was criminal or tortious' . . . Where the purpose . . . is not illegal or tortious, but the means are, the victims must seek redress elsewhere . . . Although [defendant]'s taping may well have been a tortious invasion under state law, plaintiffs have produced no probative evidence that [defendant] had an illegal or tortious purpose when it [was] made"); *J.H. Desnick v. ABC*, 44 F.3d 1345, 1353 (7th Cir. 1995) ("defendants did not order the [recording] . . . to commit a crime or tort. Maybe the program as it was eventually broadcast was tortious . . . [b]ut there is no suggestion that the defendants sent the testers . . . for the purpose of defaming plaintiffs); *United States v. Dale*, 991 F.2d 819, 842 (D.C. Cir. 1993) (relying on *Vest*, rejecting application of the exception), *cert. denied* 510 U.S. 1030 (1993); *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989) (similar); *Meredith v. Gavin*, 446 F.2d 794, 798–99 (8th Cir. 1971) (similar).

Plaintiff's attempts to distinguish these cases—relegated to a footnote, Opp., 9 n.9—is unpersuasive.[5] Plaintiff argues that because some district court decisions in some circuits have reached differing outcomes without careful review of the appellate precedent, this Court should adopt Plaintiff's circular logic that an alleged interception suffices to invoke the crime tort exception. Not so. *See In re Google Privacy Litig.*, 806 F.3d at 145 ("all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition involving tortious or criminal use of the interception's fruits"). Plaintiff relies on *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024), saying it applies *Caro* and allows the claim to stand, but *Gay* relied on "*Cooper* and *Kane*, [two district court decisions,] as well as precedent in other circuits," never substantively addressing *Caro*.[6] Likewise, in *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, the court reasoned that "Plaintiffs allege that Defendant intercepted [their] IIHI for the intended use of disclosing the information to Meta, which is a HIPAA violation," but the alleged interception *is* the disclosure to Meta—in other words, there is no *separate* tort or criminal act, there is just the alleged disclosure. 2024 WL 4350328, at *4 (E.D. Pa. Sept. 30, 2024); *contra In re Google Privacy Litig.*, 806 F.3d at 145 ("criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition involving tortious or criminal

[5] Plaintiff attempts to distinguish *Caro* as addressing a "recording of an audio conversation," but that is a far more personal and substantial interference than what is alleged here—tracking a device's interactions with a public website.

[6] Indeed, *Caro*, binding circuit precedent, is only mentioned once in *Gay*. *Id.* at *2. *Gay* also conflicts with other New York federal district court cases. *See, e.g., In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001) ("plaintiffs clearly allege that [defendant] has committed a number of torts. However, nowhere have they alleged that [defendant]'s 'primary motivation' or a 'determining factor' in its actions has been to injure plaintiffs tortiously").

use of the interception's fruits"). Clearly, *Gay* and *Murphy*, two unreported decisions, fail to address binding circuit precedent in reaching flawed results.[7]

Since the filing of BMC's Motion, district courts continue to find that similar allegations fail to trigger the crime-tort exception and dismiss ECPA claims. *See, e.g.*, *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *4, 9 (C.D. Ill. Mar. 18, 2025) ("Congress's decision to include that language indicates that the 'crime-or-tort' exception requires a specific intent that the Defendant knew its acts were in violation of the HIPAA. By Plaintiff's own account, the 'trackers' were 'used by the Defendant to benefit Genesis Health and its marketing and advertising purposes,' . . . , not *for the purpose of* knowingly committing a violation of the HIPAA" (emphasis in original)).[8]

In addition to Plaintiff being unable to square her proposed application of the crime-tort exception with the precedent within the First Circuit and decisions of other federal courts of appeals, one court recently noted that "courts have typically only found liability under the wiretapping statutes when *the data is also collected from the much more sensitive patient portal part of a healthcare company's website*." *Okash v. Essentia Health*, 2025 WL 642913, at *4 (D. Minn. Feb. 27, 2025) (emphasis supplied). Similarly, Plaintiff does not allege that any information within BMC's patient portal was intercepted.[9] *See id.* In *Okash*, the court previously held that

[7] The last case Plaintiff relies on, *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024), only cites *Caro* once and never attempts to square its holding with it. Moreover, both *Murphy* and *Kane* adopt the flawed interpretation of HIPAA that the court in *Becerra* soundly rejected. *American Hosp. Ass'n. v. Becerra,* 738 F. Supp. 3d 780, 803 (N.D. Tex. Jun. 20, 2024) ("[s]imply put, **Identity** (Person A) + **Query** (Condition B) ≠**IIHI** [or PHI]").

[8] *See also Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (dismissing ECPA claim because "there is an absolute dearth of information specific to Plaintiff as what was disclosed to Facebook that would plausibly be in violation of HIPAA").

[9] Plaintiff alleges that the BMC Website recorded when a user clicked on the button to go to the patient portal section of the Website, but just because someone goes to the MyChart portal login area reveals nothing of substance. Plaintiff does not allege that any information *within* the MyChart portal—things like medical records, test results, or messages with providers—was ever revealed.

"[plaintiff]'s allegations that [the hospital] violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta, which is not an independent crime or tort," and while "[plaintiff] newly alleges that [the hospital] violated several more state privacy statutes in sharing his data with Meta," this does "not fix the core problem the Court previously identified: [plaintiff] alleges *these statutes are violated with the initial interception itself, not that the data is independently used in a crime or tort*." *Id.* at *3 (emphasis supplied). Plaintiff's claim fails for the same reason—alleging that the interception itself was the crime or tort, not that there was an independent criminal or tortious "purpose" to use the information. *See id.*; *McHugh*, 57 F. Supp. 3d at 100. As in *Okash*, and similar cases across the country, this Court should reject Plaintiff's attempt to invoke the crime-tort exception in 18 U.S.C. § 2511(2)(d).

### B. PLAINTIFF ALLEGED THE TRACKING WAS DONE FOR COMMERCIAL PURPOSES

Plaintiff misconstrues BMC's arguments regarding what her own Amended Complaint characterized as BMC's alleged commercial or marketing motives to allegedly install the code, which demonstrates that, even accepting her allegations as true, the alleged "purpose" of utilizing the code was for better marketing and commercial gain, Am. Compl., ¶¶ 30, 181—neither of which is an independent "criminal" or "tortious" purpose. Contrary to the decisions cited by Plaintiff, courts in the First Circuit require a plaintiff to allege that the independent crime or tort was the primary motivation or a determinative factor in undertaking to commit the alleged interception, *McHugh*, 57 F. Supp. 3d at 100, but, here, Plaintiff only alleges a commercial or marketing motivation. *See also Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) ("Even taking Plaintiffs' factual allegations as true, Defendant allegedly used lawfully obtained IIHI for advertising purposes or for commercial gain, but there are no alleged facts from which the Court could conclude that Defendant did so for the purpose of committing a criminal or tortious act"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097,

at *13 (W.D. Wash. Mar. 4, 2025) ("Plaintiff's allegations . . . point to a non-criminal, non-tortious purpose for Defendant's use of the acquired communications"). Plaintiff fails to plead facts that could establish the crime-tort exception. *See id.*; *McHugh*, 57 F. Supp. 3d at 100.

### C. PLAINTIFF DOES NOT ALLEGE THAT ANY "CONTENTS" WERE INTERCEPTED

Plaintiff's reliance on her conclusory and *hypothetical* allegations in the Amended Complaint fails to support her claim that the "contents" of any communication were intercepted, as explained in BMC's Mem., p. 8. *See In re Google Inc. Priv. Litig.*, 806 F.3d at 135–39 (explaining what constitutes "contents"). In her Opposition, Plaintiff posits that the *types* of information she alleged *could* be intercepted satisfy the standard, but she only alleges vaguely that she used the Website for various tasks. *See* Am Compl., ¶ 12. In the cases Plaintiff relies on, the plaintiffs alleged actual transmission to a third party of specific confidential information and/or that they received targeted advertising suggesting that their information was disclosed—*e.g.*, *M.G. v. Therapymatch,* 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) ("[plaintiff] alleges that Google intercepted the information he provided about the mental health conditions for which he was seeking therapy"); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (plaintiff "searched for specific prescriptions").[10] Plaintiff's generic allegations do not plausibly suggest that the "contents" of any communication was intercepted. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69 (W.D. Pa. 2023) (plaintiff's allegation "lacks critical necessary details for the Court's analysis of the type of information allegedly captured by [defendant]"). On this additional basis, Plaintiff's ECPA claim fails.

[10] Plaintiff cites *Doe v. Emerson Hosp.*, 2023 WL 8869624, at *6 (Mass. Super. Nov. 22, 2023), Opp., p.11, but it addressed the Massachusetts Wiretap Act and not what constitutes "contents."

## II. THE AMENDED COMPLAINT DOES NOT STATE A PRIVACY ACT CLAIM

Plaintiff's claim under M.G.L. c. 214 § 1B (the "MPRA"), fails to state a plausible claim for intrusion upon seclusion or public disclosure of private facts and should be dismissed. In the Opposition, pp. 11–15, Plaintiff attempts to analogize her claim to cases where plaintiffs have pled specific, personal information that was disclosed, but she has not done so. Plaintiff's hypothetical "examples" of information that "do not necessarily reflect webpages Plaintiff personally visited," Am. Compl., ¶ 84, fail to demonstrate how she suffered an "unreasonable and substantial or serious" interference with her privacy. *Nelson v. Salem State Coll.*, 845 N.E.2d 338, 348 (Mass. 2006). Her MPRA claim should, therefore, be dismissed. *Squeri v. Mount Ida College*, 954 F.3d 56, 69 (1st Cir. 2020) (affirming dismissal of MPRA claim).[11]

The information that Google and Meta allegedly received is, at most, search terms typed into a website search box and the fact that certain webpages were visited. Plaintiff does not allege that Google or Meta actually connected a computer's web browsing history to her (which is not possible), nor does she even allege that she was registered with Google or Meta so as to allow them to track her web browsing (which likely would have required her to agree to their terms of registration). Instead, Plaintiff simply speculates that Google and Meta *potentially* could mine her web browsing data in the alleged manner and then *if* they could tie Plaintiff to a specific computer (which is not possible), computers at those companies, theoretically, if they actually viewed the information, could guess about Plaintiff's medical conditions, or speculate that she could be a BMC patient, Opp., p. 13. Such allegations of speculative prospective harm fail to state a claim.

[11] Plaintiff cites *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 850 (2024) for the proposition that MPRA claims may be "cognizable," Opp., 12, 16–17, 19, 20, but this mere *dicta* from the SJC does nothing to support whether Plaintiff has plausibly alleged actionable claims here.

Further to this point, while Plaintiff alleges that web browsing information could be used for commercial purposes, Opp., p. 13, like developing personalized advertisements, she never alleges that she ever received a personalized advertised related to her use of the BMC Website. She merely speculates that such a use is possible, Opp., pp. 14–15. But "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," it fails to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The authorities cited by Plaintiff, Opp., p. 12, fail to demonstrate the viability of her MPRA claim and are distinguishable.[12] In other healthcare cases cited by Plaintiff, the plaintiffs made *factual* allegations regarding the disclosure of *their* information—unlike Plaintiff's vague, general allegation that she used the Website, Am. Compl., ¶ 12, with no supporting factual allegations. *See, e.g., Doe v. Bos. Med. Ctr.*, 2023 WL 7105628, at *5 (Mass. Super. Ct. Sept. 14, 2023) (finding that complaint alleged "disclosure of personal and healthcare-related information over multiple website visits").[13] Plaintiff's generalized and hypothetical "examples" here, which she does not claim pertain to her, Am. Compl., ¶ 84, are a far cry from the allegations made in other cases and closely align with cases where vague and conclusory allegations have been dismissed. *See Yaghoobi v. Tufts Med. Ctr., Inc.*, 2025 WL 81591, at *5 (D. Mass. Jan. 13, 2025) (complaint

[12] In addition to failing to identify any authorities that support her MPRA claim, Plaintiff wholly fails to distinguish *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) and *Koppel v. Moses*, 2020 WL 6292871, at *8–*9 (D. Mass. Oct. 27, 2020), cited by BMC, which demonstrate why Plaintiff's failure to identify any "private facts" disclosed bars her claim.

[13] *See also Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147–48, 152 (D. Mass. 2024) (alleged disclosure of "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location," and that Plaintiff received "targeted online advertisements related to her health conditions, including . . . weight loss and diabetes"); *Emerson Hosp.*, 2023 WL 8869624, at *5 ("information about Plaintiff's status as" a patient, including "exact content of communications" and "information about treating doctors, potential doctors, conditions, treatments, appointments, search terms, bill payment" allegedly disclosed).

failed to plead "facts revealing what information was shared, [or] what aspect of the information was confidential," and merely speculated that confidential information was shared).[14]

Moreover, both Plaintiff's intrusion upon seclusion and public disclosure of private facts theories each falls flat. Initially, BMC has not intruded on Plaintiff's seclusion where she voluntarily browsed and searched BMC's Website. *Okash v. Essentia Health*, 2024 WL 1285779, at *7 n.9 (D. Minn. Mar. 26, 2024) ("[c]ourts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta").[15] Similarly, Plaintiff has not identified any information that was allegedly made "public." *Post Acute*, 2025 WL 511069, at *8 ("[T]here are no specific facts regarding precisely what information was disclosed to whom and why that transmission would cause shame or embarrassment under the circumstances. Nor is there any other detailed factual description of the allegedly highly offensive conduct.").[16] Plaintiff's MPRA claim fails and should be dismissed.

## III. PLAINTIFF'S PURPORTED BREACH OF CONFIDENCE CLAIM FAILS

With respect to the purported claim for "breach of confidence," Plaintiff's minimal allegations do not support such a claim, even if such a cause of action exists. While Plaintiff

---

[14] Plaintiff posits that this case is different than *Yaghoobi* because the tracking code intercepts information, Opp., p. 13 n.13, but this ignores the key holding there and Plaintiff's shortcoming here: in both situations *no details regarding the information allegedly disclosed* was provided.

[15] *See also Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *12 (D. Ariz. Jan. 28, 2025) ("Plaintiffs are suing [defendant], to whom they did voluntarily give their information. Plaintiffs' intrusion-upon-seclusion claim is dismissed without leave to amend"); *Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *8 (M.D. Pa. Feb. 14, 2025) ("[T]here are no specific facts regarding precisely what information was disclosed to whom and why that transmission would cause shame or embarrassment under the circumstances. Nor is there any other detailed factual description of the allegedly highly offensive conduct."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 892–93 (C.D. Cal. 2024) (similar).

[16] *Nienaber*, 733 F. Supp. 3d at 1090 ("Even if the alleged disclosure was considered public disclosure, Plaintiff has not adequately identified the personal PHI she alleges was publicized for the Court to determine whether any such disclosure would be highly offensive to a person with ordinary sensibilities.").

accurately quotes *Alberts v. Devine*, 479 N.E.2d 113 (Mass. 1985), she ignores that, in that case, the SJC was addressing the obligation of a physician "to hold in trust confidential information" received from the patient—the type of information that is wholly lacking from the Amended Complaint. *Alberts* cannot be extended to everything a medical facility does. Plaintiff never alleged that any communications with her *physicians* at BMC were disclosed; rather, she hinges her claims on her browsing of BMC's public-facing Website. *See Becerra*, 738 F. Supp. 3d at 725, 801–04 (general searches on hospital's website are not PHI or IIHI). This claim also fails due to the lack of any specific factual allegations regarding Plaintiff's interactions with the Website. Plaintiff does not even attempt to distinguish *Willitts v. Engie N. Am. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing claim based on *Alberts* where "there was no disclosure to a physician"). Plaintiff's breach of confidence claim fails and should be dismissed.[17]

## IV. PLAINTIFF FAILED TO PLAUSIBLY ALLEGE ANY FIDUCIARY DUTY

Plaintiff's arguments with respect to her claim that BMC breached any alleged fiduciary duty cannot satisfy the applicable pleading standard and should be dismissed. To the extent Plaintiff baldly asserts that the Website was "designed for use by patients," Opp., p. 15, she is mistaken, and her own allegations make clear that it is the MyChart portal that was designed for patients. Am. Compl., ¶ 19 ("BMC Website lets healthcare consumers access their private medical information online through the MyChart patient portal"). BMC's public-facing Website, however, is there for the general public, including prospective patients who may be looking at multiple different options for their care, students or other individuals researching issues generally, the media, and to provide general business information like hours or contact information. Plaintiff

[17] *See also Hartley*, 2023 WL 7386060, at *2 (dismissing claim where "Plaintiff has not alleged any specific breach of any confidentiality committed by [defendant]").

cites no support for her contention that browsing a public website creates a fiduciary relationship, a proposition which, if accepted, would flood the courts with litigation.

Plaintiff cites *Emerson Hosp.*, but there, the patient expressly alleged that he had suffered a concussion and was treated at Emerson's Cantu Concussion Center, 2023 WL 8869624, at *3. Similarly, in *Tenet*, the court only tangentially discussed the breach of fiduciary duty claim and plaintiff alleged that her "identity, patient status, request for medical treatment, health conditions," including diabetes and an interest in weight loss, as well as "treatments, and appointment time and location" were all disclosed, whereas here Plaintiff makes only barebones, vague allegations regarding her own actions. 731 F. Supp. 3d at 147–148, 151. These cases do not demonstrate that *Plaintiff's allegations* plausibly allege any breach of fiduciary duty, and they do not.

Plaintiff wholly ignores that the Massachusetts Appeals Court rejected similar attempts to expand a general fiduciary duty to doctors—let alone hospitals, like BMC—outside of the patient-physician context. *See Korper v. Weinstein*, 783 N.E.2d 877, 882 n.11 (Mass. App. Ct. 2003). Plaintiff's allegations are tied to her use of the public Website and not any specific aspect of her treatment by BMC physicians, which falls outside of Plaintiff's patient relationship with BMC. *See id.* at 881 ("scope of the fiduciary duty is defined by the incidents and undertakings of the defendant as a physician"). The gap between a potential fiduciary duty owed to Plaintiff as a patient and the conduct at issue in the Amended Complaint (web browsing) is too far and strained to support Plaintiff's claims in this action. *See id.*

Lastly, Plaintiff focuses on "the attribution of her communications by Google and Facebook," Opp., p. 16, but she does not allege that she was registered with either of those entities

or, if so, the scope of what she voluntarily consented to by registering with them.[18] Based on the barebones allegations in the Amended Complaint, Plaintiff's breach of fiduciary duty claim fails.

## V. PLAINTIFF'S NEGLIGENCE CLAIM FAILS

Plaintiff's arguments regarding her negligence claim also fail to save it from dismissal. Plaintiff does not meaningfully address the authorities relied on in BMC's Memorandum, and she fails to support her claim with *factual* allegations from the Amended Complaint.

*First*, as it relates to imposition of a "duty," Plaintiff cites *Bennett v. Eagle Brook County Store, Inc.*, 557 N.E.2d 1166 (Mass. 1990) and *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1052 (Mass. 2014), but in both of those cases the Court refused to find that the statute was a legitimate basis for a jury instruction on duty. *Bennett*, 557 N.E.2d at 1268 ("It has long been the rule in this Commonwealth that violation of a statute does not by itself establish a breach of duty, for it does not constitute negligence per se."); *Roe No. 1*, 16 N.E.3d at 1052 ("Hospital already has a legally cognizable duty to prevent harm to its own minor patients, *not because the existence of the statutes created that duty*" (emphasis supplied)). Outside of the statutes, regulations, or other rules standing alone, Am. Compl., ¶¶ 207–208, Plaintiff does not allege any independent *facts*—like the pre-existing duty present in *Roe No. 1*—that would support the imposition of a legal duty here. *See Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) ("HIPAA does not create a private right of action."); *Williams v. TMC Health*, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024) (no duty "requiring healthcare providers who maintain websites to protect website visitors from having their

[18] Plaintiff's argument that the patient portal and appointment pages "could" be used to identify Plaintiff, Opp., p. 16, is both patently equivocal and inconsistent with the actual allegations in the Amended Complaint. For example, while she alleges that merely clicking the link to the patient portal login page is captured, she does not allege how this would disclose any confidential information to a third party, let alone whether or how the information was traced to her.

interactions with the webpage logged and shared for advertising purposes").[19] Plaintiff has not alleged any plausible duty owed by BMC with respect to the Website.

*Second*, even assuming a duty existed (and one does not), Plaintiff has not alleged any breach. As previously explained, *Becerra* clarified that the types of information at issue in this case are not PHI/IIHI, 738 F. Supp. 3d at 725, 801–04 (use of a hospital's website does not result in PHI or IIHI), and, as a result, there was no statutory duty to protect them.[20] As a result, Plaintiff's allegations merely allege that she generally used BMC's Website for general, vague purposes, Am. Compl. ¶ 12, but the alleged disclosure of any such generalized information does not violate any duty, meaning Plaintiff has failed to show a colorable (let alone plausible) breach. Plaintiff's allegations distinguish her allegations from those in *Tenet*. 731 F. Supp. 3d at 147–148 (plaintiff alleged that her particular health conditions, treatments, appointment time and location was transmitted to Meta and these disclosures caused her to receive advertisements for diabetes and obesity). Without those similar types of allegations, Plaintiff's negligence claims fails.

*Third*, Plaintiff's arguments regarding the economic loss doctrine are unavailing. While she cites to magistrate judge's report and recommendation in *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *20 (D. Mass. Dec. 31, 2019), that decision expressly limits its holding, noting that it was premised on the notion that "Massachusetts law would support imposing a duty on *employers*

[19] Plaintiff notes that *Williams* is not Massachusetts authority, but her own brief relies on a 1998 Texas federal district court decision and an Indiana state superior court decision to argue that there is a duty. Opp., p. 17. The rejection of statutory "duties" for civil liability in *Williams* more closely aligns with Massachusetts law under *Bennett* and *Roe No. 1*.

[20] While Plaintiff cites to the transcript in *Doe. v. Partners Healthcare*, Opp., p. 18, the plaintiff in that action did not assert a negligence claim *at all*, making it wholly inapposite. She also repeatedly cites three state superior court decisions—*Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025); *Elkins v. Bartholomew Cnty. Pub. Hosp.*, 2024 WL 5471834 (Super. Ct. Dec. 16, 2024); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024), Opp., pp. 9, 18—but they address claims under an exceedingly liberal state-court pleading standard that is wholly inapplicable here, where *Twombly* and *Iqbal* control.

*who collect and store employees' PII.*" *Id.* (emphasis supplied); *see also id.* at *18 (noting that "employees' PII [was] entrusted to their employer *as a condition of employment*") and at *21 (noting that Massachusetts courts do not apply the doctrine in fiduciary relationships and the employer/employee relationship is a "well recognized form" of such a relationship). Likewise, in *Shedd v. Sturdy Mem'l Hosp., Inc.*, 2022 WL 1102524, at *8 (Mass. Super. Ct. Apr. 5, 2022), the court preliminarily refused to apply the doctrine because the plaintiff alleged the "disclosure of social security numbers, financial information, and confidential medical information." *See id.*[21] Again, here, Plaintiff does not allege the disclosure of this type of information. *See Becerra*, 738 F. Supp. 3d at 725, 801–04 (general searches on hospital's website are not PHI or IIHI). Plaintiff's negligence claim should be dismissed.

## VI. PLAINTIFF DOES NOT ALLEGE ANY CONTRACT

Plaintiff's Opposition entirely fails to demonstrate the existence of any contract (express of implied) on which she could assert a claim for breach of contract. In two paragraphs, Opp., pp. 18–19, Plaintiff concedes that she lacks sufficient information to allege whether she assented to any contact, claiming that is "plausible" that she did, but that is simply speculation. Plaintiff's inability to identify any contract that she alleged was breached or that she herself even *assented* to the terms of the contract is dispositive. A "mere possibility" that she entered into a contract is plainly insufficient. *Iqbal*, 556 U.S. at 679. Plaintiff discusses BMC's privacy policy, but, without a meeting of the minds and consideration exchanged, BMC's privacy policy is not a contract. *See* BMC Memo. at 16–17. Plaintiff has alleged nothing that would convert BMC's privacy policy from a policy into an enforceable contract. On this basis alone, her claim fail. *See Webb v. Injured*

---

[21] Indeed, as noted above, the court in *Shedd* premised its holding on the *potential* for a "special relationship" between plaintiff and the hospital, but, here, based on allegations related to the use of BMC's public-facing Website, no such relationship exists. *See Korper*, 783 N.E.2d 877

*Workers Pharmacy*, *LLC*, 2023 WL 5938606, at *3 n.5 (D. Mass. Sept. 12, 2023) (if "[defendant] 'agreed it would not disclose the PII it collects from patients to unauthorized persons,'" it was 'too meager, vague, [and] conclusory" to state a claim).

The cases Plaintiff cites are readily distinguishable. In *Tenet*, for example, Judge Saris found that "Plaintiff alleges that Tenet used trackers to collect Private Information entered by patients accessing their patient portals on the Website," such as information regarding the plaintiff's diabetes and obesity, which the court appeared to conclude meant that private information from the plaintiff's medical records was at issue. 731 F. Supp. 3d at 150. Here, there are no similar allegations. In *Emerson*, the state court merely noted that there was an "absence of case law from the Commonwealth clearly on point," and decided it would be "better . . . to assess this claim on a fuller record" because "[t]he allegations sufficiently suggest that Emerson may have entered into an implied contract," in a decision that did not apply the federal pleading standard (and failed to apply the state pleading standard to the extent it is equivalent). 2023 WL 8869624, at *4. Plaintiff's contractual claims fail as a matter of law. *See Webb*, 2023 WL 5938606, at *3 n.5 (claim must move beyond "the realm of mere conjecture'").

## VII. *TOMASELLA* BARS PLAINTIFF'S UNJUST ENRICHMENT CLAIM

In her Opposition, Plaintiff misconstrues applicable First Circuit precedent, arguing that she should be allowed to plead "in the alternative," Opp., 20, but she is mistaken. *See Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020) ("a party with an adequate remedy at law cannot claim unjust enrichment," regardless of whether the remedy is viable).[22] Plaintiff cites *Tenet* for the proposition that the Court "reject[ed] the precise argument BMC makes here," but

[22] *See also United States ex rel. Hitrost, LLC v. Study Across the Pond, LLC*, 2025 WL 871024, at *11 (D. Mass. Mar. 19, 2025) (where the law "offers a cause of action for Defendants' purported wrongful conduct . . . an adequate remedy at law is available," dismissing unjust enrichment claim); *Cordeiro v. Grep Atl., LLC*, 2025 WL 889460, at *3 (D. Mass. Mar. 21, 2025) (same).

*Tenet* did not address the First Circuit's clear edict in *Tomasella*, which—addressing prior First Circuit precedent—made clear that "unjust enrichment claims must be dismissed because an adequate remedy at law was undoubtedly available" to the plaintiff, even if "not viable" under applicable law. 962 F.3d at 83–84. Plaintiff alleges a slew of other claims that would provide an adequate remedy, if viable on her alleged facts, and, therefore, this claim fails. *See id.*

## VIII. PLAINTIFF'S ARGUMENTS REGARDING DAMAGES ALL FAIL

BMC moved to dismiss Plaintiff's MPRA (Mem., p. 11), breach of fiduciary duty (p. 12), negligence, breach of contract (p. 14), and unjust enrichment claims (p. 19) for lack of any damages, explaining why each claim requires damages under Massachusetts law. Rather than identifying how she suffered some discrete, crystalized harm, Plaintiff vaguely argues that Google or Meta's "monetiz[ation]" of the "intercepted communications" somehow constitutes damages that BMC owes to her, Opp., pp. 19–20. This fails to demonstrate any harm to Plaintiff, and her citations are distinguishable. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (allegations that "Meta unjustly profited" sufficed for claims *against Meta* but Meta is not a defendant here);[23] *Emerson Hosp.*, 2023 WL 8869624, at *2 (never addressing *damages*, analyzing Plaintiff's standing); *Gay*, 2024 WL 4203263, at *5 (dismissing negligence, invasion of privacy; and breach of implied contract claims). Lastly, Plaintiff attempts to distinguish cases BMC relied on by arguing there is a "market" for internet data, Opp., p. 20 n.27, but she fails to demonstrate any harm that could justify a claim for damages.[24] Plaintiff failed to allege any

---

[23] *See also Nienaber*, 733 F. Supp. 3d at 1094 ("Plaintiff claims that 'similar' claims were upheld in *Doe v. Meta*" but it "is inapt as it discusses an unjust enrichment claim in the context of Defendant Meta . . . selling plaintiffs' data and unjustly retaining the proceeds which is not the situation alleged in this case") (dismissing negligence and contract claims for lack of damages).

[24] *See also Bonewit v. New-Indy Containerboard LLC*, 2024 WL 4932186, at *5 (D. Mass. Dec. 2, 2024) ("[plaintiff]'s alleged damages based upon diminished value of PII is not a compensable harm"); *Nienaber*, 2025 WL 692097, at *8 (W.D. Wash. Mar. 4, 2025) ("Plaintiff provides no information as to . . . the impairment of her ability to participate in the market for her Personal

*actual* harm suffered resulting from the alleged placement of tracking technologies on the Website. Without any damages, Plaintiff's MPRA, breach of fiduciary duty, negligence, breach of contract, and unjust enrichment claims all fail and should be dismissed. *See Reidy v. Umass Memorial Medical Center, Inc.*, 2021 WL 6777622, at *2 (Mass. Super. Ct. June 17, 2021) (dismissing negligence, breach of fiduciary duty, breach of contract, and violation of statutes prohibiting invasion of right to privacy and breach of confidentiality claims for lack of damages); *Post Acute*, 2025 WL 511069, at *8, 9 ("Doe has not pleaded facts demonstrating that the conduct alleged caused actual damages—a defect that undermined his negligence claim and is once again impactful here," dismissing breach of contract, unjust enrichment, and breach of fiduciary duty claims).[25]

## CONCLUSION

Plaintiff's Amended Complaint should be dismissed, in its entirety, with prejudice.

Dated: April 25, 2025

Respectfully submitted,

**DEFENDANT,**
**BOSTON MEDICAL CENTER CORPORATION,**

*/s/ Wystan M. Ackerman*
Linn F. Freedman, BBO #639564
Wystan M. Ackerman, BBO #651086
Wm Maxwell Daley BBO #694729
**ROBINSON & COLE LLP**
One Boston Place, 26th Floor
Boston, Massachusetts 02108
Tel.: 800-762-2678
Fax: 617-557-5999
lfreedman@rc.com
wackerman@rc.com
wdaley@rc.com

---

Information," dismissing negligence, breach of contract, invasion of privacy, and unjust enrichment claims); *In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022) (similar).

[25] *T.D.*, 12024 WL 3972984, at *4 ("fail[ed] to plead actionable damages"); *B.K.*, 721 F. Supp. 3d at 1068 (same); *R.C.*, 733 F. Supp. 3d at 898 (damages "too vague and conclusory to survive").

**CERTIFICATE OF SERVICE**

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 25, 2025

*/s/ Wystan M. Ackerman*
Wystan M. Ackerman