**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ELIZABETH NOVA,<br><br>For herself and the Class,<br><br>v.<br><br>BOSTON MEDICAL CENTER CORPORATION,<br><br>Defendant. | **Case No. 1:25-cv-10105-GAO** |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff submits this notice of supplemental authority to inform the Court of several recent decisions that provide additional authority to assist the Court in resolving questions presented on the Motion to Dismiss filed by Boston Medical Center ("BMC") (Doc. No. 17) and Plaintiff's motion to amend her complaint (Doc. No. 36). These decisions reinforce that the overall trend in authority affirms claims similar to those Plaintiff asserts here and rejects BMC's arguments for dismissal.

(i) *Doe v. Baystate Health Sys.*, 2026 U.S. Dist. LEXIS 57677 (D. Mass. Mar. 19, 2026) (attached as Exhibit A). In *Baystate*, Judge Kobick denied a motion to dismiss an ECPA claim relating to the use of tracking technologies on a healthcare website, rejecting the arguments BMC makes here. As to the crime-tort exception, Judge Kobick held:

> Doe plausibly alleges that Baystate intentionally intercepted her communications on its website for the purpose of committing a tortious act in violation of M.G.L. c. 214, § 1B [the MRPA]. According to the amended complaint, Baystate, through its Privacy Policy, affirmatively misled Doe by promising that any "identifiable information" she submitted would "only be used to support [her] customer/patient relationship with" it and would be disclosed only if "required by law" or with "specific written consent." … Despite these assurances of privacy, Baystate allegedly transmitted her confidential information—including her Facebook ID and information about her patient status, her search for breast cancer screenings and providers, and her scheduling of a mammogram—to Meta and Google without her authorization.

*Id.* at *11-13. Judge Kobick reasoned that BMC's violation of its own privacy policy supported both its MRPA claim and the crime-tort exception, as allegations—similar to those against BMC—that Baystate

violated its own privacy policy supported the inference that Baystate intercepted communications for the purpose of committing a tortious act (violations of the MRPA). *Id.*

Judge Kobick also held that allegations of a financial motive are compatible with a purpose of committing a criminal or tortious act, *id.* at *13-14, and that "Baystate's alleged intent to intercept Doe's communications was, as alleged, independent of its plan to disclose those communications to third parties" in violation of the MRPA, *id.* at *14-16. Judge Kobick also found the plaintiff alleged the interception of "contents" of communications, rejecting the narrow construction of that ECPA element for which Baystate advocated (similar to BMC's argument here). *Id.* at *16-18.

Finally, Judge Kobick also affirmed Massachusetts state law claims based on factual allegations similar to those here (most significantly, Baystate's violation of its own privacy policy), including violation of the MRPA, breach of implied contract, and breach of fiduciary duty, rejecting arguments on each claim similar to those BMC makes here. *Id.* at *7-10, 18-24.

(ii) *Hannant v. Culbertson Mem'l Hosp. Found.*, 2026 U.S. Dist. LEXIS 57449 (C.D. Ill. Mar. 19, 2026) (attached as Exhibit B). In *Hannant*, the court found adequate allegations to support the ECPA's crime-tort exception, where the plaintiff alleged the interception of communications, including information about plaintiff's doctors, treatments, conditions, and "her log in and use of [a] patient portal," "combined with identifying information" such as her IP address and Facebook identifiers, in order to "obtain marketing services." *Id.* at *14-15, 21. The court also found that "[t]here is an independent criminal act," given that "the allegations identify two steps: (1) the capture of personal health information through trackers embedded in the hospital's website, and (2) the disclosure of this information to third parties." *Id.* at *19. The court also found that the plaintiff adequately alleged the interception of "content" of communications, including "individuals' status as medical patients, the identity of their medical providers, details of their treatment, and the use of log-in buttons" to the patient portal. *Id.* at *22. Notably, the court in *Hannant* denied the motion to dismiss the ECPA claim after previously granting a

motion to dismiss the same claim without prejudice, underscoring that pleading deficiencies regarding the crime-tort exception may often be cured by amendment.

(iii) *McClain v. Cap. Vision Servs., LLC*, 2026 U.S. Dist. LEXIS 52341 (N.D. Ill. Mar. 13, 2026) (attached as Exhibit C). *McClain* observes and holds that "the weight of authority … nationwide holds that a disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA," rejecting contrary authorities as "outlier[s]." *Id.* at *10. *McClain* also confirms that "a defendant's alleged commercial or financial purpose does not render the ECPA's crime-tort exception inapplicable." *Id.* at *12.

(iv) *Theys v. Dental Intel., Inc.*, 2026 U.S. Dist. LEXIS 46654 (N.D. Ill. Mar. 6, 2026) (attached as Exhibit D). In *Theys*, the court held that the plaintiffs "have sufficiently alleged that Defendants transmitted their individually identifiable health information to third parties in violation of HIPAA such that the crime-tort exception may apply." *Id.* at *35.

(v) *In re Allstate & Arity Consumer Privacy Litig.*, 2026 U.S. Dist. LEXIS 43200 (N.D. Ill. Mar. 3, 2026) (attached as Exhibit E). *Allstate*, which involved cell phone app tracking technologies, confirmed that "a monetary motive does not foreclose the [ECPA's] crime/tort exception." The court was "particularly persuaded by the reasoning of" *Stein v. Edward-Elmust Health*, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025), regarding the proper construction of the ECPA's crime-tort exception, and that the disclosure of "intercepted information to third parties" for subsequent unlawful use can support the exception. *Id.* at *32-33.

(vi) *Rodriguez v. Google, LLC*, 2026 U.S. Dist. LEXIS 20412 (C.D. Cal. Jan. 30, 2026) (attached as Exhibit F). *Rodriguez* affirmed a jury verdict and class certification against Google for invasion of privacy arising from tracking technologies in cell phone apps, confirming the core of the plaintiffs' factual theory supporting that tort was that Google "collect[ed] certain data *after it said it would not*." *Id.* at *4-5, 33, 37 (emphasis added). (Plaintiff's theory under the MRPA here is similar.)

(vii) *Krzyzek v. Open Techs., Inc.*, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) (Exhibit G), and *Semien v. Pubmatic Inc.*, 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026) (Exhibit H). *Krzyzek* and *Semien* (two decisions from the same judge) hold that "the association of Plaintiff's data with preexisting user profiles is a further use of Plaintiffs' data" that satisfies the crime-tort exception, and "[a]s numerous lower courts have found, being primarily motivated by profit does not render the crime-tort exception inapplicable." *Kryzek*, 2026 U.S. Dist. LEXIS 15195, at *21-22; *Semien*, 2026 U.S. Dist. LEXIS 15196, at *27-28. This holding supports Plaintiff's argument here that the subsequent commercial exploitation of intercepted patient communications is a separate act that supports the crime-tort exception. (Plaintiff bolsters her factual allegations regarding BMC's subsequent commercial exploitation of Plaintiff's intercepted communications in her proposed Second Amended Complaint, *see* Doc. Nos. 36, 37-2).

(viii) *Ramirez v. Lasikmd USA, Inc.*, 2026 U.S. Dist. LEXIS 14108 (S.D. Cal. Jan. 26, 2026) (attached as Exhibit I). In *Ramirez*, the court, in applying the crime-tort exception, held that "even where a defendant is arguably motivated by monetary gain, the tort or crime exception may apply" and that allegations that the defendant "intentionally transferred Plaintiff's confidential, personally identifiable health information" supported the exception. *Id.* at *7-8.

(ix) *Smith v. Rack Room Shoes*, 2026 U.S. Dist. LEXIS 13251 (N.D. Cal. Jan. 23, 2026) (attached as Exhibit J).[1] In *Smith*, the court held that the plaintiff had "adequately alleged the applicability of the crime-tort exception" based on defendant Rack Room's tortious use of intercepted communications for "advertising and marketing efforts," providing an example of how the ECPA's crime-tort exception does not necessarily require proof of a HIPAA violation (*Smith* involved an online shoe store, not a hospital and healthcare information as here). *Id.* at *4-5.

[1] This decision is a later decision in *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025), which Plaintiff here cites in her pending motion for leave to file a second amended complaint.

Dated: March 26, 2026

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

BERGER MONTAGUE PC
Lane L. Vines (*pro hac vice*)
1818 Market St., Suite 3600
Philadelphia, PA 19103
(215) 875-3000 – Telephone
lvines@bergermontague.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: March 26, 2026

*/s/Patrick J. Vallely*
Patrick J. Vallely