**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ELIZABETH NOVA, for herself and the Class,** *Plaintiff,* | : | |
| **v.** | : | **C.A. NO.: 1:25-cv-10105** |
| **BOSTON MEDICAL CENTER CORPORATION,** *Defendant.* | : | |

**DEFENDANT BOSTON MEDICAL CENTER CORPORATION'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITIES AND *FIFTH* NOTICE OF SUPPLEMENTAL AUTHORITIES**

Defendant Boston Medical Center Corporation ("BMC") respectfully submits this response to Plaintiff's recent Notice of Supplemental Authority (ECF No. 46) (the "Notice"), along with BMC's Fifth Notice of Supplemental Authorities to advise the Court of decisions issued after the completion of briefing on BMC's pending motion to dismiss (the "Motion," ECF Nos. 17, 18) and prior notices of supplemental authorities (ECF Nos. 30, 32, 33, 45), addressing similar claims regarding alleged use of tracking technologies.

Plaintiff's Notice cites the outlier decision in *Doe v. Baystate Health Sys.*, 2026 WL 776861 (D. Mass. Mar. 19, 2026), which failed to apply First Circuit precedent and the clear weight of authority from this Court, including *Goulart*, which requires the alleged crime or tort to have been the "primary motivation" or "determinative factor" for effectuating the alleged wiretap. *See, e.g.*, *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) ("[patient] fails to plausibly allege that [the hospital]s 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was for the purpose of committing a criminal violation or

tort"); *see also United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993) (requiring same for crime-tort exception to apply). In *Baystate*, the Court failed to address this issue, calling it a "question of fact," while every other District of Massachusetts decision has addressed it as a matter of law and then applied the applicable law to the facts alleged (including *Goulart*, *Doe v. Emerson Hosp.*, *Vita v. Blue Cross and Blue Shield of Massachusetts, Inc.*, *Doe v. Lawrence Gen. Hosp.*, and *McManus v. Tufts Medical Center, Inc.*).[1]

As explained at oral argument, the relevant issues before this Court as it relates to the ECPA claim are also presently pending before the First Circuit in *Goulart v. Cape Cod Healthcare, Inc.*, Case No. 25-01672, which heard oral argument on April 6, 2026. To the extent *Baystate* creates a split of authority in this District—albeit with the strong weight of authority supporting BMC's position—the First Circuit's decision in *Goulart* will address whether similar allegations against a healthcare system plead a violation of the ECPA. Although it is unlikely that this Court will need to look outside of the First Circuit in deciding BMC's Motion, BMC addresses recent out-of-Circuit authority below.

The following newly issued decisions support BMC's arguments made in this case:

1. *Nguyen v. Abbott Lab'ys, Inc.*, 2026 WL 579206, at *4–5 (N.D. Ill. Mar. 2, 2026). In *Nguyen*, the plaintiffs made similar claims to those at issue here against a company that sold medical devices and programs associated with treating diabetes, claiming that the defendant transmitted information related to their "(1) status as medical customers, (2) specific health conditions, i.e., diabetes, and (3) the specific diabetes management device used or sought." *Id.* at

[1] Since BMC's Fourth Notice of Supplemental Authorities, two more decisions issued by another judge on this Court have dismissed similar ECPA claims against healthcare providers. *See Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483 (D. Mass. Mar. 10, 2026) (dismissing ECPA claim); *Progin v. UMass Mem'l Health Care, Inc.*, 2026 WL 632770 (D. Mass. Mar. 6, 2026) (same).

*2. The Court noted, however, that "[t]he fact that a form was completed, a button to subscribe was clicked, or a user was female is distinguishable from the kind of personally identifiable information Abbott would need to disclose to be liable under the ECPA." *Id.* at *4. The Court went on to explain that, with respect to plaintiffs' attempts to allege disclosure of HIPAA-protected information, the ECPA claim failed because:

> The disclosure of HIPAA-protected information must be tied to a specific individual—in other words, be *individually* identifiable. Apart from stating legal conclusions, the individual plaintiffs do not allege what personal information Abbott disclosed when plaintiffs enrolled in the program. The mere existence of tracking tools on Abbott's website does not in itself establish the disclosure of HIPAA-protected information. I agree with defendants that the transmitted data alleged in the screenshots fails to plausibly allege that Abbott disclosed HIPAA-protected information.

*Id.* at *5 (emphasis in original and footnotes omitted). The Court held that, "[a]s a result, the crime-tort exception does not apply and [the] motion to dismiss the ECPA claim is granted." *Id.* The Court dismissed all claims with prejudice, explaining that "[p]laintiffs have been given an opportunity to amend their complaint once" and the facts "in the amended complaint preclude plaintiffs from plausibly alleging negligence or violations of the ECPA and CIPA." *Id.* at *7.

2. *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *3–4 (W.D. Wash. Mar. 4, 2026). The court dismissed the ECPA claim, noting that "the question before the Court is not whether ECPA's crime-tort exception could ever apply to a disclosure of PHI from Defendant's Website to an unauthorized third party, it is whether the Complaint pleads sufficient facts to allow the Court to draw the reasonable inference that Defendant intercepted Plaintiff's health-related information for the purpose of committing a criminal or tortious act, where such act is separate from the act of disclosure." *Id.* at *3. Analyzing that issue, the court held that "[t]he Complaint does not plead such facts," and "[a]lthough Plaintiff states that Defendant 'intended to

violate' HIPAA and 'disclosed HIPAA-protected health information to unauthorized third parties,' the Complaint does not plead any facts to support these conclusory statements." *Id.* at *4.

The court explained that, although "the Complaint repeatedly states that the information was intercepted for 'targeted advertising purposes' and that the disclosure itself was unlawful," "it never states that Defendant disclosed Plaintiff's PHI for an unlawful purpose" and "does not specify what HIPAA-protected information was allegedly disclosed, nor whether such information was criminally and tortiously used, accessed, or otherwise implicated after the initial disclosure." *Id.* The court held that plaintiff did not plead "'sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception,'" dismissing the ECPA claim. *Id.*

3. *Muraski v. Penn Highlands Healthcare, Inc.*, 2026 WL 353041, at *9 (W.D. Pa. Feb. 9, 2026). There, the court held that "Plaintiffs have failed to allege with any particularity that there was a HIPAA violation," because they "do not allege what information was searched, what PHI was disclosed, what confidential diagnoses were revealed, or that a particular medical condition was scheduled through the application, or how their inputted information relates to Plaintiffs' own medical care and diagnoses." *Muraski*, 2026 WL 353041, at *9. The court held that "'[t]he specifics are essential to convert a case like this from a law-school hypothetical to an actionable dispute'" and dismissed the state-law wiretap claim. *Id.* (citation omitted). While the court in *Muraski* was addressing a WESCA claim—Pennsylvania's ECPA equivalent—the Court expressly noted that "[b]ecause the relevant provisions and statutory definitions (e.g., 'intercept' and 'contents') from [WESCA] are identical to those in the [Federal Wiretap Act, 18 U.S.C. § 5725(a)], the Court can look to decisions applying those provisions and definitions for guidance." *Id.* at *9 (brackets in original) (citation omitted).

The out-of-Circuit cases cited by Plaintiff in her recent Notice are inapposite for the following reasons:

In *Hannant v. Culbertson Mem'l Hosp. Found.*, 2026 WL 777296 (C.D. Ill. Mar. 19, 2026) the court declined to dismiss an ECPA claim where the plaintiff specifically alleged that the hospital disclosed "the name and location of her personal physician, the medical treatment she researched including information related to an MRI test, her treatment search information, her research on obtaining medical records, and her log in and use of the patient portal." Here, Plaintiff merely alleges hypotheticals, which are a far cry from the detailed information at issue in *Hannant*.

In *McClain v. Cap. Vision Servs., LLC*, 2026 WL 710926 (N.D. Ill. Mar. 13, 2026) the court premised its decision with respect to the crime-tort exception on the fact that "the weight of authority in this District," referring to the Northern District of Illinois, supports dismissal, but the weight of authority *in this District* clearly supports dismissal and applies the "primary motivation" or "determinative factor" standard that *McClain* never addressed. *E.g.*, *Goulart*, 2025 WL 1745732, at *3.

In *Theys v. Dental Intel., Inc.*, 2026 WL 636743 (N.D. Ill. Mar. 6, 2026), the court noted that plaintiff alleged that the provider allegedly disclosed "requests for appointments, the names of the dental clinics where those appointments were made, the reason for the appointments, the name of the attending medical provider, their phone numbers, and their insurance providers." Here, Plaintiff does not allege that her similar information was disclosed and, instead, merely relies on hypotheticals in her pleading. The *Theys* court also did not apply the "primary motivation" or "determinative factor" analysis that applies in this Circuit and several other Circuits.

The court in *In re Allstate & Arity Consumer Privacy Litig.*, 2026 WL 594708 (N.D. Ill. Mar. 3, 2026) did not address the "primary motivation" analysis, did not address whether an

alleged HIPAA violation could suffice to trigger the crime-tort exception, and addressed an entirely different technology than the one at issue here, all of which makes it wholly inapplicable.

*Rodriguez v. Google, LLC*, 2026 WL 252570 (C.D. Cal. Jan. 30, 2026) is wholly inapt as is a court's decision on a jury verdict regarding whether Google collected users' data on cell phones after they proactively applied certain settings to preclude such tracking. The alleged intentional conduct—tracking users across devices, third-party apps and other websites and collecting their data—is markedly different than Plaintiff's use of BMC's Website.

*Krzyzek v. Open Techs., Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) is similarly unavailing. While Plaintiff notes that the court stated that "[c]ourts have held that 'the association of Plaintiffs' data with preexisting user profiles" can satisfy the crime-tort exception, Notice, p. 4, the court in *Krzyzek* did not make such a finding and, more importantly, it is not alleged that BMC associated Plaintiff's data with any "preexisting user profile." Like the other cases Plaintiff relies on, *Krzyzek* also did not apply the "primary motivation" standard and, therefore, it should not influence this Court's analysis.[2]

*Ramirez v. Lasikmd USA, Inc.*, 2026 WL 194855 (S.D. Cal. Jan. 26, 2026) fails to apply the First Circuit's "primary motivation" or "determinative factor" analysis and merely follows a 2024 Central District of California decision in declining to dismiss the ECPA claim, while being contrary to the clear weight of authority in this Circuit.

*Smith v. Rack Room Shoes*, 2026 WL 183852 (N.D. Cal. Jan. 23, 2026) merely reaffirmed that court's earlier decision to deny a similar motion to dismiss, and the defendant argued that only the third-party's intent should be relevant to the application of the crime-tort exception (here that

---

[2] *Semien v. Pubmatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) merely offers the same inapt analysis.

would be Google or Meta). The court rejected that argument (which BMC does not make here), and, like all the other decisions Plaintiff relies on, did not apply the "primary motivation" analysis, making *Smith* inapplicable.

**WHEREFORE**, BMC respectfully requests that the Court consider the authorities and points noted herein when considering its pending Motion to Dismiss.

*/s/ Wm Maxwell Daley*
Linn F. Freedman, BBO #639564
Wystan M. Ackerman, BBO #651086
Wm Maxwell Daley, BBO #694729
**ROBINSON & COLE LLP**
One Boston Place, 26th Floor
Boston, Massachusetts 02108
Tel.: 617-557-5900
Fax: 617-557-5999
lfreedman@rc.com
wackerman@rc.com
wdaley@rc.com

*Attorneys for Defendant Boston Medical Center Corporation*

**CERTIFICATE OF SERVICE**

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 7, 2026.

*/s/ Wm Maxwell Daley*
Wm Maxwell Daley